1  Mark Lapham, Esq. (SBN 146352)
   Law Offices of Mark Lapham, Esq.
2  751 Diablo Rd.
   Danville, CA 94526
3  Tel:  (925) 837-9007
   Fax:  (650) 738-0325
4

5  Attorney for Plaintiff,
   OBED M. APOSTOL, JR.

6

7

8              **UNITED STATES DISTRICT COURT**

9            **NORTHERN DISTRICT OF CALIFORNIA**

10

11  OBED M. APOSTOL, JR., an individual.     )   Case No.: 3:13-cv-01983-WHO
                                             )
12             Plaintiff,                    )   **FIRST AMENDED VERIFIED**
                                             )   **COMPLAINT**
13             v.                            )
                                             )       1. **WRONGFUL FORECLOSURE**
14  CITIMORTGAGE, INC., a New York           )       2. **CONSTRUCTIVE FRAUD:**
    Corporation; CITI RESIDENTIAL            )       3. **QUIET TITLE;**
15  LENDING, INC., a national banking        )       4. **VIOLATION OF CONDITIONS**
    association; CR TITLE SERVICES, INC., a  )          **PRECEDENT OF THE DEED OF**
16  Delaware Corporation; CRYSTAL MOORE,     )          **TRUST;**
    an individual; BRYAN BLY, an individual; )       5. **VIOLATION OF CALIFORNIA**
17  MORTGAGE ELECTRONIC                      )          **CIVIL CODE SECTION**
    REGISTRATION SYSTEMS, INC., a            )          **2934(a)(1)(A);**
18  Delaware Corporation; and DOES 1 through )       6. **VIOLATION OF THE TRUTH-**
    100, inclusive,                          )          **IN-LENDING ACT 15 U.S.C 1601**
19                                           )          ***et seq.*;**
               Defendants.                   )       7. **VIOLATION OF CALIFORNIA**
20                                           )          **BUSINESS AND PROFESSIONS**
                                             )          **CODE SECTIONS 17200, et seq.**
21                                           )          **(Fraud Claims);**
                                             )
22                                           )   **DEMAND FOR JURY TRIAL**
                                             )
23                                           )
                                             )
24                                           )
                                             )
25  _____ )

26      Pursuant to the Federal Rules of Civil Procedure ("Fed.R.Civ.P."), COMES NOW, the

27  Plaintiff herein, OBED M. APOSTOL, JR., (hereinafter "Plaintiff" and/or "Homeowner"), brings

28
                                              1
    APOSTOL v. CITIMORTGAGE, INC., et al.              First Amended Verified Complaint

suit against CITIMORTGAGE, INC., a New York Corporation (hereinafter "CITIMORTGAGE"); CITI RESIDENTIAL LENDING, INC., a national banking association (hereinafter "CITI RESIDENTIAL"); CR TITLE SERVICES, INC., a Delaware Corporation; (hereinafter "CRTS"); CRYSTAL MOORE, an individual; BRYAN BLY, an individual; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., a Delaware Corporation (hereinafter "MERS"); and DOES 1 through 100, inclusive, collectively referred to as "Defendants," for wrongful foreclosure and allegations as set forth herein.  Plaintiff also seeks to invalidate and unwind the illegal foreclosure sale of his homestead, commonly known as 1330 Cedar Street, Gilroy, CA  95020, hereinafter the "Subject Property" by Defendants to a third party purchaser, TURN KEY ASSET, INC., failing to be the parties entitled to effect a foreclosure upon Plaintiff's homestead, the Subject Property.

**STATEMENT OF THE CASE**

1.    At issue is ownership of the Subject Property.  The crux of Plaintiff's case is that, as a result of fraudulent mortgage assignment(s), foreclosure documents and egregious breaches of agreements governing the mortgage-backed securities (MBS) trust to which Plaintiff's loan was sold in March 2007, none of the defendants named to this action is a beneficiary or real party in interest under Plaintiff's Deed of Trust ("DOT") having the power to enforce the accompanying note.  Plaintiff contends that his mortgage loan has become unsecured and that, consequently, no real party in interest exists with the power to collect Plaintiff's mortgage payments or to exercise the power of sale under the Deed of Trust.

2.    This situation arises from the verified fact that Plaintiff's mortgage loan was irrevocably sold by the original lender, ARGENT MORTGAGE COMPANY, LLC (hereinafter "ARGENT MORTGAGE"), in a securitization transaction on or before March 1, 2007 and ARGENT MORTGAGE was paid for the full balance of the Plaintiff's loan. The subject mortgage loan (consisting of the deed of trust and mortgage note) was bundled with other mortgages in a pool by the intermediary loan purchaser, CITIGROUP GLOBAL MARKETS REALTY CORP. (hereinafter "CGMRS"), the "Sponsor" and "Seller" in the securitization transaction. CGMRS is a nonbank

subsidiary of CITIGROUP, INC. (hereinafter "CITIGROUP"). This was the first unlawful sale of the Plaintiff's mortgage loan.

3.   Thereafter, securitization Sponsor and Seller CGMRS irrevocably sold the Plaintiff's mortgage loan (pooled with other mortgages) to CITIGROUP MORTGAGE LOAN TRUST, INC. (hereinafter "CMLTI"), the securitization "Depositor" and "Registrant" who formed the Mortgage-Backed Securities Trust ("MBS Trust"): CITIGROUP MORTGAGE LOAN TRUST 2007-AMC2, ASSET-BACKED PASS-THROUGH CERTIFICATES, SERIES 2007-AMC2 (hereinafter the "CMLTI 2007-AMC2").  This MBS Trust is a Special Purpose Vehicle ("SPV") with an election and continuing qualification of a *Real Estate Mortgage Investment Conduit* ("REMIC") pursuant to the Internal Revenue Tax Code of 1986, as amended (the "Tax Code"). CMLTI, a single-purpose entity, is another nonbank subsidiary of CITIGROUP.  This was the second unlawful sale of the Plaintiff's mortgage loan.

4.   In exchange for the securities Certificates (the "Certificates") issued by the MBS Trust, CMLTI sold the pooled Mortgage Loans (including Plaintiff's mortgage loan) to the CMLTI 2007-AMC2. U.S. BANK NATIONAL ASSOCIATION (hereinafter "U.S. BANK") serves as Trustee and fiduciary owner of the pooled Mortgage Loans in the Trust Fund for the benefit of the Certificateholders (investors) of the CMLTI 2007-AMC2.  This was the third unlawful sale of the Plaintiff's mortgage loan.

5.   The MBS Trust was created and formed with the execution of the Pooling and Servicing Agreement (the "PSA") dated as of March 1, 2007 (also herein referred to as the "Securitization Agreement.") The PSA is construed in accordance with and governed by the substantive laws of the State of New York.[1] The contractual terms, control, and ownership of the securitized Mortgage

---

[1] When assets are transferred to a New York trust (as in the case of CMLTI 2007-AMC2), which was formed and governed in accordance with laws of the State of New York] there has to be actual delivery in as perfect a manner as possible; a "mere recital" is not sufficient  (and, underlined: endorsements in blank does not suffice either because there is nothing that indicates that something endorsed in blank is trust property, rather than the trustee's or someone else's). **Adherence to the Securitization Agreement determines whether there was a transfer effected or not because under NY trust law (which governs most PSAs), a transfer not in compliance with a trust's documents is void.**

Loans are governed by the binding PSA. This governing Securitization Agreement provides for the valid and legal procedure for selling of the Mortgage Loans to the MBS Trust (with the precise order of transfer) on or before the trust's specified "Closing Date" to create a clear "Purchaser-Seller" position whereby certain REMIC provisions under the Tax Code were observed, and whereby the original lender (the "Originator") selling its mortgage loans to the securitization trust entity (issuer of trust's securities certificates) would be protected from issues regarding either entity going into bankruptcy.

6.    According to Section 860 of the Internal Revenue Code, in order for an investment entity to qualify as a REMIC (as in the CMLTI 2007-AMC2), all steps in the contribution and transfer process (of the notes and mortgages/deed of trusts) must be <u>true and complete sales</u> between the parties and <u>must be accomplished within the three month time limit from the date of REMIC "startup" of the entity.</u> Therefore, every transfer of the note(s) and assignment of mortgage(s) must be a true purchase and sale, and, consequently the note must be endorsed and the mortgage (deed of trust) assigned from one entity to another.  Any asset (mortgage loan) identified for inclusion in an entity seeking REMIC status must be sold into the entity within the three-month time period from the official startup day of the REMIC which in this instant case was on March 30, 2007, the "Closing Date" and REMIC "Startup Day" for the MBS Trust: CMLTI 2007-AMC2. Any procedural defect relating to endorsement, notarization, assignment of rights, and recordation renders foreclosure action on the loan asset on behalf of the REMIC vulnerable to stay of foreclosure, and possible dismissal through absence of proper standing to proceed.

7.    When ARGENT MORTGAGE, CGMRC and CMLTI each got paid in full on or before the MBS Trust's Closing Date on March 30, 2007 for selling the Plaintiff's mortgage loan in the securitization transaction, ARGENT MORTGAGE, CGMRC and CMLTI's ownership title and beneficial interest in and to the mortgage loan, respectively, were each extinguished.

8.    However, despite CGMRC and CMLTI's representations, warranties and covenants in the binding PSA regarding the transfer and assignment of the securitized Mortgage Loans (including Plaintiff's), the official records of Plaintiff's mortgage in the Santa Clara County

APOSTOL v. CITIMORTGAGE, INC., et al.                    First Amended Verified Complaint

Recorder <u>do not</u> show any assignment of Plaintiff's security interest (DOT) from original lender ARGENT MORTGAGE to any entity on or before May 30, 2007. There was no record whatsoever of the required intervening assignment of the Plaintiff's DOT from ARGENT MORTGAGE-to-CGMRC > from CGMRC-to-CMLTI > and from CMLTI-to-U.S. BANK as Trustee of the CMLTI 2007-AMC2. The prescribed rules and provisions of the governing trust were violated and the securitization of Plaintiff's loan failed, thereby leaving U.S. BANK, as Trustee for the REMIC MBS Trust: CMLTI 2007-AMC2, without any legal or equitable interest in Plaintiff's mortgage. This is an incontrovertible fact.

9. Such failure to assign the Plaintiff's DOT (more so without intervening indorsement of the underlying original mortgage Note), which was a material breach of the binding PSA, resulted to an irreversible break in the chain of title of the Plaintiff's mortgaged property. It should also be noted that any mortgage assignment (DOT) without the indorsement of the underlying original mortgage Note is nullity; it is not only voidable, but it is void.

10. From that point forward, up to and including the present time, through a series of manipulations and actions by those who purchased Plaintiff's loan from original lender ARGENT MORTGAGE, a maze of confusion has been created so that now it is uncertain who, if anyone, aside from Plaintiff, can make any legitimate claim to an interest in Plaintiff's real property. Such failure to validly transfer and assign the Plaintiff's mortgage loan on or before the Closing Date (also called the REMIC "Startup Date") on March 30, 2007 effectively and irreversibly broke the chain of title of the property, consequently clouding the title to the detriment of the mortgagor.

**TRANSFER OF REAL ESTATE CANNOT BE BASED UPON FRAUD**

11. The fraud on Plaintiff's mortgage loan was initiated on January 13, 2009 when Defendants conspired to cover up the botched securitization by willfully directing Defendant CITI RESIDENTIAL LENDING, INC. ("CITI RESIDENTIAL LENDING"), acting as purported Attorney-in-fact for ARGENT MORTGAGE COMPANY, LLC ("ARGENT MORTGAGE"), to assign the Plaintiff's DOT (without the underlying original mortgage Note) to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), ITS SUCCESSORS AND

APOSTOL v. CITIMORTGAGE, INC., et al.                    First Amended Verified Complaint

ASSIGNS, AS NOMINEE FOR CITIMORTGAGE, INC. ("CITIMORTGAGE"). This was done despite the fact that Defendants knew fully well that original lender ARGENT MORTGAGE had already sold the Plaintiff's DOT and Note in March 2007, and ARGENT MORTGAGE no longer has any ownership title and beneficial interest in the Plaintiff's mortgage loan. CITI RESIDENTIAL LENDING has no right, power and authority acting as Attorney-in-Fact for ARGENT MORTGAGE to assign Plaintiff's mortgage (DOT) that ARGENT MORTGAGE no longer owns since March 30, 2007.

12. In furtherance of the fraud, the above-cited Assignment of DOT (the "1st mortgage assignment") was signed and notarized by very well known and publicized "robo-signers-for-hire," CRYSTAL MOORE and BRYAN BLY, respectively. Ms. Moore is not a Vice President or employee of CITI RESIDENTIAL LENDING as was falsely represented in this assignment of mortgage instrument; she is in fact an employee of NATIONWIDE TITLE CLEARING (hereinafter "NTC") when CRYSTAL MOORE purportedly signed the first assignment of Plaintiff's DOT on January 13, 2009. Notary Public BRYAN BLY is also an employee NTC. Like Ms. Moore, Mr. Bly is a "robo-signer for hire," known to falsely represent himself as officer and employee of various lenders and mortgage servicing companies. The St. Petersburg Times reported on the mass signings by Ms. Moore and Bly, earning the duo the reputation of the two best-known "robo-signers" in the country. In a deposition in November 2010 regarding a foreclosure case in Florida, both Ms. Moore and Mr. Bly admitted signing thousands of mortgage assignments per day (i.e., between 3,000 to 5,000 assignments per day) for different lenders, securitization trusts and mortgage servicing companies and described the "Assembly Line" work they do at NTC. Ms. Moore admitted under oath that she never read any documents she signed and spends "a few seconds" with each one of them. When asked whether she is/was a Vice President of any of the companies she represented when signing the documents, Ms. Moore said, "NO." In the deposition, Ms. Moore also acknowledged she neither verifies the information in the documents nor take steps to verify information she signed.

APOSTOL v. CITIMORTGAGE, INC., et al.                    First Amended Verified Complaint

13.  Also in furtherance of the fraud, another assignment of the Plaintiff's DOT was made on March 14, 2011 and recorded on March 17, 2011 (the "2nd mortgage assignment"). Here, Defendant MERS, its successors and assigns, as Nominee for CITIMORTGAGE, fraudulently assigned Plaintiff's DOT to CITIMORTGAGE, who then simultaneously substituted Defendant CR TITLE SERVICES, INC. ("CRTS") in the DOT in place of original Trustee TOWN AND COUNTRY TITLE SERVICES, INC. under a Substitution of Trustee ("SOT") instrument recorded on March 17, 2011. The 2nd mortgage assignment (as well as the previous 1st assignment) was made a number of years after original lender ARGENT MORTGAGE had already sold Plaintiff's mortgage loan in the securitization transaction, but not legally and validly transferred to the MBS Trust on or before its "Closing Date" on March 30, 2007. Because the purported authority of MERS in the 2nd mortgage assignment was derived from and flows directly from the invalid and fraudulent 1st mortgage assignment, it follows that such 2nd Assignment of Plaintiff's DOT by MERS to CITIMORTGAGE is also void, not just voidable.

14.  The cloud on Plaintiff's title to his home property rendered it unalienable. Further, Plaintiff has been fraudulently induced to pay mortgage payments to Defendant CITIMORTGAGE, a party without authority to collect them because of egregious breaches of the governing securitization agreement.  Consequently, Plaintiff seeks the Court's intervention to invalidate the Trustee's Deed Upon Sale issued by CRTS and unwind the wrongful foreclosure, which are the subject of this action, and to quiet title to Plaintiff's real property in his name and to disgorge the ill-gotten gains obtained by Defendants at Plaintiff's expense.

## **PARTIES AND JURISDICTION**

15.  Plaintiff, OBED M. APOSTOL, JR., is informed and believes and thereupon alleges that Defendants, and each of them, claim an interest in Plaintiff's property adverse to Plaintiff's herein. Defendants' claims are without any basis in law or in equity, and said Defendants have no legal or equitable right, claim, or interest in said property.  Plaintiff therefore seeks a declaration that the title to the subject property is vested in Plaintiff's alone and that the defendants herein, and

7

each of them, be declared to have no estate, right, title or interest in the subject property and that said defendants, and each of them, be forever enjoined from asserting any estate, right, title or interest in the subject property adverse to Plaintiff herein.  This suit also seeks to declare the foreclosure sale illegal and unwound the foreclosure action on Plaintiff's unique real property, located at 1330 Cedar Court, Gilroy, CA 95020 with Parcel ID No. 808-03-035 (hereinafter the "Property").  Defendants have initiated a non-judicial foreclosure proceeding against Plaintiff's property that is not in compliance with laws of California. The subject property was sold in a wrongful foreclosure on May 15, 2012 by Defendant CR TITLE SERVICES, INC. ("CRTS"), an invalid trustee in Plaintiff's mortgage without legal authority. And CRTS subsequently transferred the title of the property by issuing a Trustee's Deed Upon Sale ("TDUS") in favor of TURN KEY ASSET, INC.

16.  Defendant CITIMORTGAGE, INC. ("CITIMORTGAGE") is a corporation organized and existing under the laws of the State of New York, with principal place of business at 1000 Technology Drive, O'Fallon, Missouri 63368 and doing business in California. CITIMORTGAGE is a subsidiary company of CITIGROUP, INC. ("CITIGROUP"), a financial holding company and the third largest U.S. mortgage lender in the United States. CITIGROUP's prime mortgage lending and servicing of those loans is provided through CITIMORTGAGE.

17. Defendant CITI RESIDENTIAL LENDING, INC. ("CITI RESIDENTIAL LENDING"), a national banking association organized under the laws of the State of Delaware and with its principal place of business in Orange, California, is another controlled company and subsidiary of CITIGROUP. Thus CITIGROUP is liable for any and all of CITI RESIDENTIAL LENDING's conduct alleged herein. CITI RESIDENTIAL LENDING is one of the largest privately held retail subprime mortgage lenders in the United States. CITIMORTGAGE or CITI RESIDENTIAL LENDING is neither the original lender nor a party to the Original Loan Transaction on October 31, 2006 between the Plaintiff and ARGENT MORTGAGE COMPANY, LLC ("ARGENT MORTGAGE"), the original lender in the Plaintiff's mortgage loan (consisting of a Promissory Note and a Deed of Trust). CITI RESIDENTIAL LENDING acquired ARGENT

MORTGAGE on September 7, 2007. Shortly thereafter, CITIGROUP rebranded ARGENT MORTGAGE COMPANY, LLC to CITI RESIDENTIAL LENDING, INC. Then on April 30, 2008, CITIGROUP transitioned CITI RESIDENTIAL LENDING's loan origination and related assets to CITIMORTGAGE and CITY RESIDENTIAL LENDING's operation was shut down.

18. Defendant CR TITLE SERVICES, INC. ("CRTS") is a Delaware corporation with its principal place of business in O'Fallon, Missouri and doing business in California. CRTS is another subsidiary and controlled company of CITIGROUP. CRTS schedules and conducts trustee's (foreclosure) sales of real property. CRTS is neither the original trustee nor a party to the Original Loan Transaction. CRTS' role and involvement here was an essential part in Defendants' conspiracy to defraud (and to commit the other acts alleged herein) in that it was through CRTS, the foreclosing trustee, Defendants were able to force wrongful foreclosure against Plaintiff's property, which sale resulted in substantial profit to Defendants. CRTS also violated numerous other laws and statutes in furtherance of such conspiracy, acted intentionally and with malice in doing these acts, for which CRTS services was paid handsomely by Defendants.

19. Defendant CRYSTAL MOORE, as an individual, employed by NATIONWIDE TITLE CLEARING ("NTC"), with a business address listed at 2100 Alt 19 North, Palm Harbor, Florida 34683 and Tel. No. 727-771-4000. Defendant CRYSTAL MOORE purportedly signed the 1st Assignment of Plaintiff's DOT in Pinellas County, Florida on January 13, 2009, falsely represented herself as Vice President of CITI RESIDENTIAL LENDING, INC. On information and belief, CITI RESIDENTIAL does not even have any office or branch in Pinellas County, Florida.

20. Defendant BRYAN BLY, as an individual, employed by NATIONWIDE TITLE CLEARING ("NTC"), with a business address listed at 2100 Alt 19 North, Palm Harbor, Florida 34683 and Tel. No. 727-771-4000. Defendant BRYAN BLY purportedly notarized the 1st Assignment of DOT instrument on January 13, 2009 in Pinellas County, Florida.

21. Defendant MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS") is organized and existing under the laws of the State of Delaware with corporate headquarters located at 1818 Library Street, Reston, VA 20190. MERS tracks the ownership

APOSTOL v. CITIMORTGAGE, INC., et al.                    First Amended Verified Complaint

interests and servicing rights in mortgage loans and holds title to mortgages solely as a nominee for MERS' member lenders which subscribe to its services.  MERS is neither the original lender nor a party to the Original Loan Transaction. Plaintiff is informed and believes and thereon alleges that MERS is not a financial lending entity.

22.  CITIGROUP GLOBAL MARKETS REALTY CORP. ("CGMRS") was the "Sponsor" and mortgage "Seller" in the securitization transaction. CGMRS, a corporation organized under the laws of the State of New York, is a nonbank subsidiary of CITIGROUP. CGMRS is neither the original lender nor a party to the Original Loan Transaction.

23.  CITIGROUP MORTGAGE LOAN TRUST, INC. ("CMLTI") was the securitization "Depositor" and "Registrant" who formed the Mortgage-Backed Securities Trust ("MBS Trust"): CITIGROUP MORTGAGE LOAN TRUST 2007-AMC2, ASSET-BACKED PASS-THROUGH CERTIFICATES, SERIES 2007-AMC2 (the "CMLTI 2007-AMC2"), a special purpose vehicle ("SPV") with an election and continuing qualification of a *Real Estate Mortgage Investment Conduit* ("REMIC") pursuant to the Internal Revenue Tax Code of 1986, as amended (the "Tax Code"). CMLTI, a single-purpose entity and a corporation organized under the laws of the State of Delaware, is another nonbank subsidiary of CITIGROUP. CMLTI is neither the original lender nor a party to the Original Loan Transaction.

24.  U.S. BANK NATIONAL ASSOCIATION ("U.S. BANK") is a nationally chartered bank, serving here as Trustee for the Certificateholders of the CMLTI 2007-AMC2, a mortgage-backed securities trust created and formed by a governing Pooling and Servicing Agreement (hereinafter the "PSA") dated as of March 1, 2007. U.S. BANK, not in its individual capacity but solely as Trustee for the CMLTI 2007-AMC2, lists its business address as One Federal Street, 3rd Floor, Boston, Massachusetts 02110. Neither U.S. BANK nor the CMLTI 2007-AMC2 (also herein referred to as the "MBS Trust") is registered with the California Secretary of State. Neither U.S. BANK nor said MBS Trust is the original lender or a party to the Original Loan Transaction.

25.  Plaintiff is ignorant of the true names and capacities of Defendants sued under fictitious names Does 100, inclusive, and Plaintiff will amend this Complaint to allege such true names and

APOSTOL v. CITIMORTGAGE, INC., et al.                                    First Amended Verified Complaint

1   capacities as soon as they are ascertained.  Plaintiff is informed and believes and thereon alleges

2   that each of said fictitiously named Defendants is responsible in some manner for the acts

3   complained of herein.

4         26.  Venue of this action is proper in this District as the residential real property, which is

5   the subject of this action, is situated in Santa Clara County, California, and the acts complained of

6   herein occurred in Santa Clara County, California.

7         27.  Plaintiff is informed and believes, and thereon alleges that each of the fictitiously

8   named Defendants, Defendants DOES 1 through DOES 100, inclusive, is legally responsible in

9   some manner for the occurrences herein alleged, and that Plaintiff's damages as herein alleged were

10  legally caused by those Defendants, and/or that each of the fictitiously named Defendants is

11  responsible in some manner for the occurrences herein alleged, and the Plaintiff's injuries as herein

12  alleged were legally caused by such conduct.

13  **MATERIAL FACTS COMMON TO ALL CAUSES OF ACTION**

14        28. On or about October 31, 2006, Homeowner (Plaintiff) entered into a residential

15  mortgage loan transaction (the "Original Loan Transaction") with ARGENT MORTGAGE

16  COMPANY, LLC ("ARGENT MORTGAGE").  ARGENT MORTGAGE is the Lender on record

17  in Plaintiff's Promissory Note (hereinafter "Note") and Deed of Trust (hereinafter DOT"). The

18  Original Loan Transaction consisted of a Note and DOT securing the Plaintiff's home property that

19  is subject to this action. ARGENT MORTGAGE is the initial beneficiary and TOWN AND

20  COUNTRY TITLE SERVICES, INC. as original Trustee in the DOT. CITIMORTGAGE, INC.

21  ("CITIMORTGAGE") is the purported loan servicer.  A true and correct copy of the **Plaintiff's**

22  **DOT** dated as of October 31, 2006 is attached hereto as **Exhibit "A"** and incorporated by reference

23  as though fully set forth herein. The DOT (also dated as of October 31, 2006) was recorded in the

24  official records of the Santa Clara County Recorder on November 6, 2006 as Document No.

25  19171994.

26  / / /

27  / / /

28

11

APOSTOL v. CITIMORTGAGE, INC., et al.                    First Amended Verified Complaint

**I – PLAINTIFF'S MORTGAGE LOAN WAS SOLD IN A VERIFIED SECURITIZATION TRANSACTION ON OR BEFORE MARCH 30, 2007**

29. Plaintiff is informed and believes and thereon alleges that shortly after funding the Plaintiff's loan on or about October 31, 2006 as an "off-the-book" transaction, original lender ARGENT MORTGAGE, as the loan "Originator" in a verified securitization transaction, in fact irrevocably sold the Plaintiff's mortgage loan to CITIGROUP GLOBAL MARKETS REALTY CORPORATION ("CGMRC"). As noted hereinbefore, this was the first sale of the Plaintiff's mortgage loan.

30. Acting as "Sponsor" and "Seller" in the securitization transaction, CGMRC bundled the Plaintiff's loan with other mortgages in a pool and sold the pooled Mortgage Loans, without recourse, to securitization "Depositor" CITIGROUP MORTGAGE LOAN TRUST, INC. ("CMLTI"), an affiliate company of CGMRC. This was the second sale of the Plaintiff's mortgage loan.

31. The securitization process involves pooling mortgage loans, transferring those obligations to a trust thereby converting them into securities and then selling fractional interests in the trust's pool of mortgages to investors. The relationship of the parties to the securitization is governed by a binding Pooling and Servicing Agreement (the "PSA"). The PSA determines when a party to the agreement has the right to foreclose. The loans are purchased from an "Originator," collected and packaged by a securitization "Sponsor" and then sold to a "Depositor" who in turn sells and transfers these loans into a tax-advantaged trust entity. The trust is organized as Special Purpose Vehicle ("SPV") to be a Qualified Special Purpose Entity ("QSPE"), which receives special tax treatment. To avoid double taxation of both the trust and the certificate holders (investors), mortgages are held in *Real Estate Mortgage Investment Conduits* ("REMICs"), a category of QSPE, pursuant to Section 860 of the Internal Revenue Code (the "Tax Code"). The QSPE with an election to continuously qualify as a REMIC trust holds the mortgage loans as collateral on the securities traded and sold by Wall Street and other financial firms to multiple investors. REMICs, in general, are not taxable entities; the pro-rata "pass-through" distributions (cash flows) to certificate holders are taxable. To qualify and receive such favorable "pass-through"

or single tax treatment based on strict Internal Revenue Service REMIC rules, all interest in the mortgage is supposed to be transferred forward to the certificate holders ("Investors").

32. In this instant case, Plaintiff's loan was sold through a series of securitization transactions into the MBS Trust: CITIGROUP MORTGAGE LOAN TRUST 2007-AMC2, ASSET-BACKED PASS-THROUGH CERTIFICATES, SERIES 2007-AMC2 (the "CMLTI 2007-AMC2") on or before the trust's "Closing Date" on March 30, 2007. The MBS Trust was created and formed with the execution of the PSA dated as of March 1, 2007 (also herein referred to as the "Securitization Agreement"). The Securitization Agreement is construed in accordance with and governed by the substantive laws of the State of New York. The PSA governing the CMLTI 2007-AMC2 consists of 296 pages when downloaded as a PDF file and printed. This PSA, which was filed on April 17, 2007 with the Securities and Exchange Commission (SEC) as Form 8-K for 2/15/2007 EX-4.1 (SEC File 333-138237-08).

33. The contractual terms, control, and ownership of the securitized Mortgage Loans are governed by the binding PSA. This governing Securitization Agreement provides for the legal procedure for selling of the Mortgage Loans to the MBS Trust (with the precise order of transfer) on or before the trust's specified "Closing Date" to create a clear "Purchaser-Seller" position whereby certain REMIC provisions under the Tax Code were observed, and whereby the original lender (the "Originator") selling its mortgage loans to the securitization trust entity (issuer of trust's securities certificates) would be protected from issues regarding either entity going into bankruptcy.

34. For the MBS Trust to acquire this protection from Lender and Issuer from bankruptcy (referred to as "*Bankruptcy Remote*"), at least two "*True Sales*" of the loans had to occur, when loans were transferred to different entities. A "*True Sale*" of the loan would be a circumstance whereby one party owned the Note, and then sold it to another party. An offer would be made, and then accepted, with financial consideration given to the "seller" in return for the Note. The Notes would be transferred, and the security instruments (mortgages or deeds of trust) "assigned to the buyers" of the Note, <u>with an assignment and recording thereof made every step of the way, and</u>

APOSTOL v. CITIMORTGAGE, INC., et al.                    First Amended Verified Complaint

each Note indorsed to the next party. Such legal process was necessary to maintain a valid lien, one that would permit a loan servicer to foreclose on a borrower in purported default on behalf of the Trustee of the MBS Trust (i.e., the holder of the note and mortgagee on record in the deed of trust.)

35. CMLTI is the securitization "Registrant" and "Depositor" who formed the CMLTI 2007-AMC2 with an election and continuing qualification of a REMIC in accordance with the Tax Code. Pursuant to the binding PSA, CGMRC as the "Sponsor" and "Seller" in the securitization represented, warranted and covenanted that it irrevocably sold, transferred, assigned and conveyed the Plaintiff's mortgage loan, together with other mortgages in a pool, to CMLTI, the securitization Depositor. As noted hereinbefore, this was the second sale of the Plaintiff's mortgage loan.

36. Thereafter, Depositor CMLTI represented, warranted and covenanted in the binding and governing PSA that it in exchange for the securities certificates (multiclass bonds) issued by the MBS Trust, CMLTI irrevocably sold the pooled Mortgage Loans (including the Plaintiff's loan), without recourse, to U.S. BANK as Trustee for the benefit of the Certificateholders of the CMLTI 2007-AMC2 on or before the trust's "Closing Date" (also concurrently the REMIC "Startup Day") on March 30, 2007. This was the third sale of the Plaintiff's mortgage loan.

37. Pursuant to the terms and REMIC provisions of the PSA, only the Depositor (in this case CMLTI), and no other, may transfer qualified assets (in this case the Mortgage Loans) to the securitization trust. [Emphasis added] This was necessary and in accordance with the Tax Code to preserve and maintain the separation and "*bankruptcy remoteness*" of the loan originator, ARGENT MORTGAGE, and the MBS Trust: CMLTI 2007-AMC2. (So if the originator went bust, the investors [certificateholders] would not be exposed to the risk of lenders to the originator trying to get the notes back out of the trust.)

38. The Depositor exists for the sole purpose of enabling the transaction to have the key elements that make it a securitization in the first place: a "*true sale*" of the Mortgage Loans to a "bankruptcy-remote" and "FDIC-remote" purchaser. The Depositor purchases the loans from the Sponsor, then immediately sells the loans to the Trustee of the securitization trust, and uses the

proceeds received from the trust to pay the Sponsor for the Depositor's own purchase of the loans. It all happens simultaneously, or as nearly so as theoretically possible. The length of time that the Depositor owns the loans has been described as "one nanosecond."

39.  The Depositor, a single-purpose entity, has no other functions, so it needs no more than a handful of employees and officers. Nevertheless, it is essential for the "*true sale*" and "*bankruptcy-remote*"/"*FDIC-remote*" analysis that the Depositor maintains its own corporate existence separate from the Sponsor and the Trust and observes the formalities of this separate corporate identity at all times. The "*Elephant in the Room*" in all structured financial transactions is the mandatory requirement to create at least <u>two</u> "*true sales*" of the notes and mortgages between the Originator and the Trustee for the Trust so as to make the assets of the Trust both "bankruptcy" and "FDIC" remote from the originator. And, these "*true sales*" must be documented by representations and attestations signed by the parties; by attorney opinion letters; by asset purchase and sale agreements (i.e., contained in the PSA); by proof of adequate and reasonably equivalent consideration for each purchase; by "*true sale*" reports from the three major "ratings agencies" (Standard & Poor's, Moody's, and Fitch) and by transfer, complete intervening endorsements and delivery receipts for mortgage notes.

40. CITIGROUP GLOBAL MARKETS, INC., the designated "Underwriter" of the securitization (and an affiliate company of securitization Sponsor CGMRC and Depositor CMLTI), sold the securities certificates or multiclass bonds backed by the Mortgage Loans in the Trust Fund on behalf of Depositor CMLTI to multiple investors. The <u>irrevocable</u> sale of the Mortgage Loans between securitization Depositor CMLTI and U.S. BANK, as Trustee for the CMLTI 2007-AMC2 (for the benefit of the Certificateholders) was not only <u>acknowledged</u>, but also <u>certified</u> by U.S. BANK, as Trustee and the fiduciary owner of the securitized Mortgage Loans in the Trust Fund for the benefit of the Certificateholders of the MBS Trust.

41.  In order to comply with MBS Trust's election and continuing qualification as a REMIC trust within the meaning of Section 860 of the Tax Code, the strict terms of the governing PSA specified a "Cut-off Date" on March 1, 2007 and a "Closing Date" (also the REMIC "Startup Day")

on March 30, 2007. The Closing Date is an <u>absolute deadline</u> after which the Trustee of the CMLTI 2007-AMC2 is <u>strictly prohibited</u> from accepting any contribution of an asset (in this case any mortgage loan). The PSA refers to any late or out-of-date mortgage loan transfer as a "*Prohibited Transaction.*"

42. The mortgage files for each mortgage loan (i.e., primarily consisting of the complete intervening assignment of the DOT and endorsement of the underlying mortgage note from the loan originator-to-seller/sponsor > seller/sponsor -to-depositor > then from depositor-to-trustee of the MBS Trust) <u>must be received by the Trustee of the MBS Trust no later than the 90 days from the Closing Date </u>– and to be acknowledged and certified by the Trustee (or the appointed Trust's Custodian). Also, each mortgage loan to be contributed to the Trust Fund must also be a qualified loan (i.e., performing loan, not in default).

43. Pursuant to the terms and REMIC provisions of the binding PSA, original lender ARGENT MORTGAGE, as loan "Originator," irrevocably sold the Plaintiff's mortgage loan to Sponsor and Seller CGMRC on or before the securitization trust's "Cut-off Date" on March 1, 2007. Thereafter, CGMRC bundled the Plaintiff's loan with other mortgages in a pool and sold the Mortgage Loans, without recourse, to Depositor CMLTI, who in turn securitized and sold these Mortgage Loans to the MBS Trust: CMLTI 2007-AMC2 on or before the trust's "Closing Date" on March 30, 2007. Loan Originator ARGENT MORTGAGE, Sponsor and Seller CGMRC and Depositor CMLTI, respectively, were each paid for the full balance of the Plaintiff's loan that was pooled with others mortgages and securitized into the CMLTI 2007-AMC2. In the binding and governing Securitization Agreement (the "PSA") that was executed under oath, securitization Seller and Sponsor CGMRC and Depositor CMLTI each represented, warranted and covenanted that each of the Mortgage Loans (i.e., with the complete intervening assignment of the deed of trust and indorsement of the underlying original note from loan originator-to-seller/sponsor > seller/sponsor -to-depositor > then from depositor-to-trustee of the MBS Trust) was properly and validly assigned, transferred and conveyed to U.S. BANK as Trustee for the benefit of the Certificateholders of the CMLTI 2007-AMC2 on or before the trust's "Closing Date" on March 30, 2007.

APOSTOL v. CITIMORTGAGE, INC., et al.                    First Amended Verified Complaint

44.  In order for one of these investment trusts to qualify for the "pass through" tax benefit of a REMIC, ALL LEGAL AND EQUITABLE INTEREST IN THE MORTGAGES HELD IN THE NAME OF THE TRUST ARE VESTED IN THE INVESTORS (CERTIFICATEHOLDERS), not in anyone else AT ANY TIME. If legal and/or equitable interest in the mortgages held in the name of the trust is claimed by anyone other than the investors, those that are making those misrepresentations are either defrauding the investors, or the homeowners & courts, or both. So if the trust, or a servicer, or a trustee, acting on behalf of the trust, is found to have violated the very strict REMIC guidelines (put in place in order to qualify as a REMIC), the "pass through" tax status of the REMIC is subject to permanent revocation.

45.  According to Section 860 of the Internal Revenue Code, in order for an investment entity to qualify as a REMIC, all steps in the "contribution" and transfer process (of the notes) must be true and complete sales between the parties and <u>must be accomplished within the three month time limit from the date of REMIC "startup" of the entity.</u> Therefore, every transfer of the note(s) must be a true purchase and sale, and, consequently the note must be endorsed from one entity to another.  Any mortgage note/asset identified for inclusion in an entity seeking REMIC status must be sold into the entity within the three-month time period from the official startup day of the REMIC. Any procedural defect relating to endorsement, notarization, assignment of rights, and recordation renders foreclosure action on the loan asset on behalf of the REMIC vulnerable to stay of foreclosure, and possible dismissal through absence of proper standing to proceed.

**II - FAILED SECURITIZATION: DESPITE PAYMENT OF THE FULL BALANCE OF THE PLAINTIFF'S LOAN, ORIGINAL LENDER ARGENT MORTGAGE FAILED TO VALIDLY ASSIGN THE MORTGAGE LOAN PURSUANT TO THE BINDING AND GOVERNING PSA.**

46.  When ARGENT MORTGAGE, CGMRC and CMLTI each got paid in full for selling the Plaintiff's mortgage loan in the securitization transaction on or before March 30, 2007, ARGENT MORTGAGE, CGMRC and CMLTI's beneficial interest and ownership title in the loan, respectively, were each extinguished.

47.  However, despite CGMRC and CMLTI's representations, warranties and covenants of

in the binding PSA, the official records of the Santa Clara County Recorder regarding the Plaintiff's mortgage <u>do not</u> show any assignment of Plaintiff's security interest (DOT) from original lender ARGENT MORTGAGE to any entity on or before May 30, 2007. To date, there is no record whatsoever of the required intervening assignment of the Plaintiff's DOT from ARGENT MORTGAGE-to-CGMRC > from CGMRC-to-CMLTI > and from CMLTI-to-U.S. BANK as Trustee of the CMLTI 2007-AMC2. That is an incontrovertible fact.

48.  Because it has been verified (and it cannot be disputed) that original lender ARGENT MORTGAGE failed to assign the Plaintiff's mortgage to CGMRC, securitization Sponsor CGMRC <u>could not</u> and <u>did not</u> assign the mortgage to CMLTI; and thus, securitization Depositor CMLTI <u>could not</u> and <u>did not</u> assign said mortgage to U.S. BANK, as Trustee for the Certificateholders of the CMLTI 2007-AMC2 on or before the trust's "Closing Date" of on March 30, 2007.

## III - BROKEN CHAIN OF TITLE WITH THE REAL PARTY IN INTEREST, BENEFICIARY AND NOTEHOLDER UNKNOWN

49.  Such failure to assign the Plaintiff's DOT (more so without intervening indorsement of the underlying original mortgage Note), a material breach of the binding PSA, <u>resulted to an irreversible break in the chain of title of the mortgaged property</u>. It should also be noted that any mortgage assignment (DOT) without the indorsement of the underlying original mortgage Note is nullity; it is not only voidable, but it is void.

50.  From that point forward, up to and including the present time, through a series of manipulations and actions by those who purchased Plaintiff's loan from original lender ARGENT MORTGAGE, a maze of confusion has been created so that now it is uncertain who, if anyone, aside from Plaintiff, can make any legitimate claim to an interest in Plaintiff's real property. Such failure to validly transfer and assign the Plaintiff's mortgage loan on or before the Closing Date (also called the REMIC "Startup Date") on March 30, 2007 effectively and irreversibly broke the chain of title of the property, consequently clouding the title to the detriment of the mortgagor.

51.  The mortgagor (borrower) herein relied on loan servicer CITIMORTGAGE's misrepresentations, and has been damaged in the following ways: 1) while the illegal foreclosure of the property proceeded, multiple parties may still seek to enforce the debt obligation against the

18

mortgagor – i.e., civil double jeopardy; 2) the title to the real estate property has been clouded, fatally defective and rendered unmarketable, as any REO would-be buyer of subject property will find themselves in legal limbo, unable to know with any certainty whether they can safely buy the property or get title insurance; 3) mortgagor never had an opportunity to refinance the loan or sell the property with a clouded title or negotiate modification of the loan with the true party in interest in the mortgage loan; 4) mortgagor had been paying the wrong party for an undetermined amount of time and overpaid in interest that was over calculated; 5) mortgagor is unable to determine whether the monthly mortgage payments was paid to the right party; and 6) mortgagor may have to expend significant funds to cover the cost of attorney's fees and related cost to regain title to the property.

52.  As cited, there was NO RECORD whatsoever in the official records of the Santa Clara County Recorder of the intervening assignment of DOT and chain of valid indorsement of the original Note from **ARGENT MORTGAGE**-to-CGMRC, CGMRC-to-U.S. BANK as trustee for the CMLTI 2007-AMC2. An irreversible broken chain of title now exists - with the true beneficiary, mortgagee and noteholder UNDOCUMENTED and UNKNOWN.

**IV – FRAUDULENT AND INVALID ASSIGNMENTS OF PLAINTIFF'S DOT AND INVALID SUBSTITUTION OF TRUSTEE IN THE DOT**

53. To cover up the failed securitization and have an "appearance of standing" in the Plaintiff's mortgage loan, Defendants willfully caused CITI RESIDENTIAL LENDING, as purported Attorney-in-fact for ARGENT MORTGAGE, to assign the Plaintiff's DOT (without the underlying original mortgage Note) to Defendant MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), its Successors and Assigns, as Nominee for CITIMORTGAGE, INC. A true and correct copy of the 1st Assignment of Plaintiff's DOT dated as of January 13, 2009 is attached hereto as Exhibit "B" and incorporated by reference as though fully set forth herein. This first mortgage assignment was recorded in the official records of the Santa Clara County Recorder on March 2, 2009 as Document No. 20151291.

54. This 1st mortgage assignment of Plaintiff's DOT to MERS as nominee for CITIMORTGAGE was fraudulently and willfully issued despite the fact that Defendants knew fully well that original lender ARGENT MORTGAGE had already sold the Plaintiff's DOT and Note in

APOSTOL v. CITIMORTGAGE, INC., et al.                    First Amended Verified Complaint

March 2007 and that ARGENT MORTGAGE no longer has any ownership title and beneficial interest in the Plaintiff's mortgage loan. For this reason, CITI RESIDENTIAL LENDING's purported authority acting as Attorney-in-fact for ARGENT MORTGAGE who no longer has any standing in the Plaintiff's mortgage loan cannot be valid. Therefore, MERS' purported right and authority as nominee for CITIMORTGAGE, its successors and assigns, and as the nominal beneficiary in the DOT is also invalid and void in the first place, not just voidable.

55. On March 14, 2011, MERS, as nominee of CITIMORTGAGE, an invalid beneficiary, willfully and fraudulently assigned the Plaintiff's DOT (without the endorsement of the underlying original mortgage Note) to CITIMORTGAGE, its purported principal in the invalid 1st assignment of Plaintiff's DOT. A true and correct copy of the 2nd Assignment of Plaintiff's DOT by MERS to CITIMORTGAGE, which was recorded in the official records of the Santa Clara County Recorder on March 17, 2011 as Document No. 21113836, is attached hereto as Exhibit "C" and incorporated by reference as though fully set forth herein.

56. Simultaneously on March 14, 2011, CITIMORTGAGE, not a valid beneficiary, substituted Defendant CR TITLE SERVICES, INC. ("CRTS") in the DOT in place of original Trustee TOWN AND COUNTRY TITLE SERVICES, INC. under a Substitution of Trustee ("SOT") instrument that was also recorded in the public records of the county recorder on March 17, 2011 as Document No. 21113837. A true and correct copy of this SOT is attached hereto as Exhibit "D" and incorporated by reference as though fully set forth herein.

57. Because the SOT instrument flows directly from the illegal and invalid Assignments of DOT, it is likewise void, not just voidable.  It is void for the additional reason that, under Section 2934(a)(1)(A) of California's non-judicial foreclosure statute, all beneficiaries must acknowledge and record the SOT.   Here, neither MERS nor CITIMORTGAGE is the valid beneficiary, mortgagee or lender; not one of these entities is an authorized agent for the UNKNOWN and UNDOCUMENTED true beneficiary in the Plaintiff's mortgage loan.

58.  Pursuant to Covenant No. 24 of the Deed of Trust, <u>only the lender (in this case the "unknown" new Beneficiary in the DOT or its duly authorized agent) has the power and authority to substitute the Trustee under the DOT</u>. [Emphasis added] Covenant No. 24 in the DOT states,

> "**Substitute Trustee**. Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument acknowledged by Lender and recorded in the office of the Recorder of the county in which the property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution."

59.  There is no record of perfected title making CITI RESIDENTIAL LENDING, MERS or CITIMORTGAGE the beneficiary in the deed of trust and/or the successor lender in the mortgage note. Therefore, the SOT is void under Section 2934(a)(1)(A) and tender of the outstanding loan amount is not required to challenge wrongful foreclosure sale of the property.  Dimrock v. Emerald Properties (2000) 81 Cal.App. 4th 686, 678.

60.  By the assignment(s) of mortgage (more so without the underlying original mortgage note) and trustee substitution, Defendants CITI RESIDENTIAL LENDING, MERS and CITIMORTGAGE have each violated the California Government Code Sections 12650-12656, and may be liable for violations of the False Claims Act. Furthermore, the fraudulent and invalid Assignment(s) of DOT and SOT instrument affected the interest in real estate and were, therefore, recorded pursuant to CA Government Code Section 27280 and CA Civil Code Section 880.350 in order to proceed falsely under the provisions of California Civil Code 2924 and other provisions of the foreclosure law of California.

61.  Defendants knew fully well that none of them has the authority to enforce Plaintiff's mortgage loan and, so, attempted to paper over and hide their violation of the governing securitization agreement and applicable California law by knowingly executing fraudulent documents preparatory to the illegal foreclosure action on Plaintiff's mortgage loan.

///
///

APOSTOL v. CITIMORTGAGE, INC., et al.                          First Amended Verified Complaint

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**V - NON-JUDICIAL FORECLOSURE ACTION INITIATED AGAINST PLAINTIFF'S ALLEGED MORTGAGE LOAN DEFAULT**

62.  Simultaneous to Defendants MERS and CITIMORTGAGE's issuance and recording of the 2nd Assignment of Plaintiff's DOT and the SOT instrument, respectively, CR TITLE SERVICES, INC. ("CRTS") representing itself as "either the original trustee, the duly appointed trustee, or acting as agent for the trustee or beneficiary" issued a Notice of Default and Election to Sell Under Deed of Trust (hereinafter "NOD") on March 14, 2011 and recorded this NOD on March 17, 2011 in the public records of the county recorder as Instrument No. 21113838. Attached to the NOD was a Declaration dated as of March 4, 2011 re Borrower Contact and Due Diligence Pursuant to Cal. Civ. Code 2923.5 and instructions to Trustee re Notice of Default. A person named "Pam January" signed this Declaration <u>without</u> specifically naming who is the "present beneficiary" in the Plaintiff's mortgage loan. A true and correct copy the **NOD** is included as **Exhibit "E"** hereto and incorporated by reference as though fully set forth herein.

63.  While the NOD recites as a matter of historical record only that ARGENT MORTGAGE is the Beneficiary in the DOT when such security instrument was recorded on November 6, 2006, CRTS <u>did not</u> state whether it was in fact acting as Agent for ARGENT MORTGAGE, CITIMORTGAGE, U.S. BANK or any entity when it issued the NOD on March 14, 2011. (CRTS could not state so because not one of said entities is the present beneficiary in the DOT after original lender ARGENT MORTGAGE irrevocably sold the Plaintiff's mortgage loan in March 2007.) CRTS did not specifically named the "present Beneficiary" in the NOD.

64.  Under Section 2924(a)(1) of California's non-judicial foreclosure statute, only a "trustee, mortgagee or beneficiary or any of their authorized agents" may record a NOD. CRTS is neither the original trustee nor the validly substituted as Trustee, nor an authorized agent of the trustee, mortgagee or beneficiary in the DOT. CITIMORTGAGE is not a valid beneficiary in the DOT and U.S. BANK, as Trustee for the CMLTI 2007-AMC2, is without any valid beneficial interest in the subject mortgage loan so it too cannot legally authorize CRTS to initiate the foreclosure action against Plaintiff's mortgage loan. Likewise, CITIMORTGAGE was neither the previous nor present beneficiary in the loan; instead it is merely the sub-servicer to WELLS

APOSTOL v. CITIMORTGAGE, INC., et al.                    First Amended Verified Complaint

FARGO, the named "Master Servicer" of the CMLTI 2007-AMC2. CITIMORTGAGE or WELLS FARGO here cannot be the valid servicer in the Plaintiff's mortgage loan on behalf of the CMLTI 2007-AMC2 because said trust entity never received a valid assignment and transfer of the Plaintiff's mortgage loan as a consequence of the failed securitization.

65. Any attempt of CITIMORTGAGE (or even WELLS FARGO) to assert alternatively that it has legal standing to foreclose on Plaintiff's mortgage loan as servicer for the CMLTI 2007-AMC2 utterly fails. Because of the failed securitization of the mortgage loan and the resulting broken chain of title, U.S. BANK as Trustee for the MBS Trust never received the intervening assignment of the Plaintiff's DOT and cannot produce a valid intervening chain of endorsement of the underlying original mortgage note. Therefore, U.S. BANK as Trustee for the CMLTI 2007-AMC2, not the valid successor lender, present beneficiary or secured creditor, cannot legally authorize CITIMORTGAGE (or WELLS FARGO) to act as servicer in the Plaintiff's loan on behalf of the MBS Trust. That is incontrovertible fact.

66. Therefore, CRTS had no power, right or authority to issue the NOD; and such NOD is void and of no legal force and effect. Section 2924(a)(1)(C) of the non-judicial foreclosure statute requires a statement in the NOD setting forth the nature of each breach actually known to the beneficiary. Here, CRTS did not provide the information required in the NOD. Any information was provided by CITIMORTGAGE, the loan servicer for the MBS Trust (but not on Plaintiff's mortgage loan), and not the present Beneficiary in the DOT. This is yet another violation of the non-judicial foreclosure statute. Due to the draconian consequences of a non-judicial foreclosure, strict compliance with the statute's provisions is required. Miller v. Cote (1982) 127 Cal. App. 3d 888, 894 (a trustee sale based on a statutorily deficient notice of default is invalid).

67. Therefore, the NOD is invalid because it was not issued by TOWN AND COUNTRY TITLE SERVICES, INC., the mortgage Trustee on record, or by any authorized agent of the "undocumented" and "unknown" new Beneficiary in the DOT. The NOD is defective and fraudulent; it is a nullity, and not in compliance with the foreclosure laws of the State of California.

68.  On July 19, 2011, CRTS, representing itself as Trustee in the DOT without any valid appointment and authority, issued a Notice of Trustee's Sale (hereinafter "1st NOTS") and recorded this 1st NOTS in the public records of the county recorder on the same day as Document No. 21247992. The foreclosure sale of the property securing the DOT was scheduled on August 15, 2011, but it did not take place on that date. A true and correct copy the **1st NOTS** is included as **Exhibit "F"** hereto and incorporated by reference as though fully set forth herein.

69.  On April 20, 2012, CRTS, again representing itself as Trustee in the DOT without any valid appointment and authority, issued another Notice of Trustee's Sale (hereinafter "2nd NOTS") and recorded this 2nd NOTS in the public records of the county recorder on April 24, 2012 as Document No. 21636023. The foreclosure sale of the property securing the DOT was set on May 15, 2012. A true and correct copy the **2nd NOTS** is included as **Exhibit "G"** hereto and incorporated by reference as though fully set forth herein.

70.  On May 15, 2012, CRTS, representing itself as Trustee in the DOT without valid any appointment and authority, sold the Plaintiff's subject Property in a foreclosure sale. CRTS issued a Trustee's Deed Upon Sale (hereinafter "TDUS") on May 22, 2012 and recorded this TDUS as Document No. 21681978 in the official records of the county recorded on May 23, 2012. In the TDUS, CRTS stated that "Grantee" TURN KEY ASSET, INC. was the highest bidder at said public auction sale, paying the amount of $287,100.01 for the Plaintiff's Property with alleged unpaid debt (together with cost) of $562,530.04.  A true and correct copy the TDUS is included as Exhibit "H" hereto and incorporated by reference as though fully set forth herein.

71.  The recorded 1st NOTS, 2nd NOTS and TDUS each states that CRTS is duly appointed trustee under the DOT. However, as cited, there is no valid Substitution of Trustee ("SOT") instrument to support such representation. Therefore the NOD, 1st and 2nd NOTS and TDUS issued by CRTS were each invalid without legal force and effect. The foreclosure notices and TDUS were each VOID, not just voidable.

72.  The fraudulent filing and recording of the abovementioned mortgage instruments (i.e., Assignment(s) of DOT, SOT, NOD, NOTS and TDUS) constitute a felony under California penal law.[2]

73.  A review of the chain of title of the property from the public records of the county recorder clearly illustrated an orchestrated attempt by the defendants to paper over the mortgage securitization violations and show an appearance of "compliance of the non-judicial foreclosure laws of California."

74. Upon information and belief and the aforementioned facts herein, Plaintiff's home property was foreclosed by strangers to the Original Loan Transaction who have no equitable or legal claim to an interest in Plaintiff's real property. Because the DOT was rendered void as alleged hereinabove, the assignments of the DOT as alleged hereinbefore are also void as a result of fraud and the lack of capacity on the part of Defendants CITI RESIDENTIAL LENDING, MERS and CITIMORTGAGE to execute a valid mortgage assignment(s) and trustee substitution. It also follows in this instant case that the Foreclosure Notices and TDUS instrument issued by a party (CRTS) without authority from the unknown beneficiary (or its authorized agent) is not in compliance with the foreclosure laws of California; each of these documents is void, without any force and legal effect.  Plaintiff is further informed and believes and thereon alleges that none of the defendants here has ownership of the Note concurrently with being the beneficiary of the deed of trust, thereby rendering the illegal foreclosure proceedings on the mortgage loan and any claim in Plaintiff's real property null and void.  Without this court's assistance, Defendants' wrongful

---

[2]  Defendants to this action have not recorded any valid, legally effective assignment of Plaintiff's mortgage and trustee substitution. Defendants' fraudulent attempts to record mortgage assignments constitute a felony under Cal. Penal Code §115(a) which provides:

> Any person who knowingly procures or offers any false or forged instrument to be filed, registered or recorded in any public office within this state, which instrument, if genuine, might be filed, registered, or recorded under any law of this state or of the United States, is guilty of a felony.

The filing and recording of the Assignments of DOT, Substitution of Trustee, Notices of Default and Trustee's Sale, and the Trustee's Deed Upon Sale are all deliberate intent and each an act to perpetuate mortgage fraud. Cal. Penal Code §532(f)(a) provides that "a person commits mortgage fraud if, with the intent to defraud, the person does any of the following ... (4) files or causes to be filed with the recorder of any county in connection with a mortgage loan transaction any document the person knows to contain deliberate misstatement, misrepresentation, or omissions."

APOSTOL v. CITIMORTGAGE, INC., et al.                    First Amended Verified Complaint

1    foreclosure would be permitted even though Defendants lack the requisite ability and right to

2    foreclose without substantive and incontrovertible evidence supporting Defendants' authority to act

3    by virtue of being the simultaneous holder of the Note and DOT or by being the agent for the

4    unknown holder of the Note and DOT.

5        75. The true owner(s) and holder(s) of the Plaintiff's Note and DOT are unknown in this

6    specific case because of the fact that there is no evidence of any legal interest on the part of

7    Defendants CITI RESIDENTIAL LENDING, MERS, CITIMORTGAGE and CRTS as either the

8    owner or holder of the Plaintiff's Note or assignee in the DOT, and in view of the lack of the

9    intervening indorsement of the original Note and the invalid assignments of the DOT on January

10   13, 2009 and March 14, 2011, which were several years passed the "true sale" of the Plaintiff's

11   mortgage loan by original lender ARGENT MORTGAGE's in the securitization transaction in

12   March 2007. Defendants CITI RESIDENTIAL, MERS, CITIMORTGAGE and CRTS are

13   strangers and not party to the Original Loan Transaction.  Not one of these entities appears in the

14   original Note and DOT.   Plaintiff is informed and believes and thereon alleges that

15   CITIMORTGAGE and its agent CRTS, (or even U.S. BANK, as Trustee for the CMLTI 2007-

16   AMC2) do not have any right, power or authority to commence the foreclosure action against

17   Plaintiff's real property.

18       76. As hereinbefore alleged, Plaintiff's mortgage loan was the subject of a securitized

19   mortgage transaction where the bundle of rights incident to the Note and DOT was sold, in parsed

20   fashion, to one or more third parties for the purpose of same serving as collateral for one or more

21   of the Special Purpose Vehicles (SPVs) in the form of securitized trusts, Collateral Debt

22   Obligations (CDOs), Collateralized Mortgage Obligations (CMOs) or other form of mortgage-

23   backed security (MBS) and/or in connection with one or more credit default swaps (CDS.)

24       **77.** Like the Defendants, the U.S. BANK or the MBS Trust here has no authority to claim a

25   beneficial interest or any interest in the deed of trust and the note unless there has been a complete

26   and unbroken chain of assignments to the trust on or before the trust's closing date pursuant to the

27   strict terms and REMIC provisions of the PSA.  Furthermore, none of the Defendants (and U.S.

28

26

APOSTOL v. CITIMORTGAGE, INC., et al.                    First Amended Verified Complaint

1  BANK as Trustee of the MBS Trust) in this case will be able to establish an unbroken chain of title

2  to any party, or substantiate a beneficial interest, real party in interest or standing to any party.

3       78.  This creates a triable issue of fact as to who the lawful owner and holder of the Note

4  truly is. U.S. BANK as Trustee of the MBS Trust (or any of its agents, i.e., MERS,

5  CITIMORTGAGE, and CRTS, who are each without any valid authority as agent of the unknown

6  true beneficiary under the DOT) does not have standing to pursue the foreclosure action; and not

7  one of the Defendants here legally acquire the Plaintiff's mortgage loan (consisting of the Note and

8  DOT.) Moreover, U.S. BANK, as Trustee for the CMLTI 2007-AMC2, has no requisite authority

9  conferred upon it by the operative and governing PSA, to accept any conveyance of a mortgage loan

10  after the closing date of the MBS Trust on March 30, 2007. U.S. BANK has no power or authority

11  to act outside of the scope of the powers conferred upon the Trustee under the PSA. U.S. BANK

12  cannot take ANY action which conflicts with the strict terms and REMIC provisions of the PSA for

13  conveyance of mortgage loans to the MBS Trust. That is an incontrovertible fact.

14       79.  It remains to be discovered whether "True Sales" took place with regard to the transfer

15  of the Note through the securitization chain. Such True Sale must be evidenced by (i) legal opinions

16  from each party that require fulfillment of the conditions for sale for sale and purchase; (ii) an arms'

17  length relationship between the parties; and (iii) evidence of the capacity of the securitization

18  parties to buy and sell, which is questionable when the so called lender's/seller's loan funds may

19  have been pre-funded from inception by the buyer/certificate holders (investors) of the MBS Trust.

20  Conclusion of a True Sale would deny rights as holder in due course for the current party (or

21  parties) attempting to foreclose on the mortgaged property, making unsupported and unproven

22  claim to be the secured creditor and beneficiary in the subject mortgage loan.

23       80.  For the MBS Trust to exercise rights of foreclosure, it will be undertaking actions

24  inconsistent with its status as a REMIC, a "pass-through" entity under Federal law.  For other

25  parties to undertake such action may not be permitted to do so given either absence of (i) standing

26  as a holder of interest or (ii) conveyance of authority to act through proper assignment under the

27  securitization agreement.  In order for one of these investment trusts to qualify for the "pass

28

APOSTOL v. CITIMORTGAGE, INC., et al.                    First Amended Verified Complaint

through" tax benefit of a REMIC, all legal and equitable interest in the mortgages held in the name of the trust are vested in the investors, not in anyone else at any time.  If legal and/or equitable interest in the mortgages held in the name of the trust is claimed by anyone other than the investors, those that are making those claims are making misrepresentations, thus defrauding the investors, the homeowners and the courts.

81.  Any further "fix" by MERS, or CITIMORTGAGE (or securitization Master Servicer WELLS FARGO), or any entity without legal standing at this late date to assign the Plaintiff's mortgage loan to the MBS Trust, is not permissible for factual three reasons: (i) it would be far too late [i.e., now almost seven (7) years passed the "Closing Date" of the MBS Trust on March 30, 2007; (ii) the assignment/conveyance of mortgage would not follow the chain of title ["broken chain of title"] and it goes directly to the trust [thereby destroying its "bankruptcy remote" shield required as a REMIC trust and violating the requirement that it go through Depositor CMLTI.; and (iii) it would only occur after the subject mortgage loan was allegedly in default (this would be contrary to the term in securitization agreements that the loan must be performing.)

82.  Because the Plaintiff's original Note and DOT were not transferred and assigned to MBS Trust within the specified time frame mandated by terms and REMIC provisions of the PSA, another entity may be found to be the true and actual owner and holder of the Note and mortgagee in the DOT. Discovery must be sought to determine if the Note and DOT to make a final determination of exactly who does own the Plaintiff's Note and DOT; to determine if the such Note and DOT have been bifurcated or split; and to discover the custody chain of physical possession and ownership of the Plaintiff's mortgage loan.

83.  In a clumsy attempt to cover up the botched securitization of Plaintiff's loan that occurred years earlier, Defendants CITI RESIDENTIAL LENDING, MERS and CITI MORTGAGE engaged in a series of fraudulent transactions, with CRTS falsely claiming it was duly appointed as "Trustee" under Plaintiff's DOT, then initiating and completing the foreclosure proceedings against the Plaintiff's mortgage loan at the behest of CITIMORTGAGE.

APOSTOL v. CITIMORTGAGE, INC., et al.                    First Amended Verified Complaint

84.  Finally, it should also be noted that when the Plaintiff's mortgage loan was securitized in March 2007, from a mortgage loan it became an investment contract wherein the borrower is an undisclosed third party who has the right to rescind the securitization negotiation/transaction but was never informed by the lender selling the mortgage loan into a REMIC MBS trust. The securitized Mortgage Loans (including the Plaintiff's loan) were already been converted into investment grade securities, and the investors have already paid for it. The Uniform Commercial Code under Article 3 (Negotiable Instruments) no longer governs these securities. As securities they are now governed by UCC Article 8 (Securities), which carry a whole different set of rules and regulations that must be followed to make the transaction valid, including but not limited to informing the property owner that the same is entering into a third party transaction with multiple investors. That has never been done in this instant case.

85.  Based on the Statute of Frauds called out in California Civil Code 1624, a Promissory Note issued by a lender, is converted into a Wall Street security, which entitles the certificate or bondholder to cash flow from the REMIC pool. In this transaction, two things did not happen pursuant to Article 8 of the UCC: 1) the Borrower was not a subscriber to said transaction and has no knowledge of it; and 2) the transaction is not memorialized by the Borrower. Under the Statute of Frauds, the Borrower can now request full rescission of the contract, H-8, and Recoupment H-9, including doing a margin call on the REMIC pool, and demanding the Securitization Trust to cease and desist and halt trading in the above securities, which in turn would disqualify the pool and make it liable for double taxation, and further substantial tax penalties and sanctions.

86.  Plaintiff is informed, believes and thereon alleges that the alleged Assignments of the DOT are null and void because of fraud and the ultra vires act on the part of Defendants CITI RESIDENTIAL LENDING, MERS and CITIMORTGAGE.  Further, on information and belief, the alleged mortgage assignments had been "robo-signed" on behalf Defendants.  Plaintiff disputes the legality of the DOT assignments. Defendant CRTS issued and recorded the NOD and NOTS against the Plaintiff's mortgage loan without any valid authority. CRTS does not also name the entity in the NOD and NOTS for which it is instituting the foreclosure. Plaintiff is further informed and believes

APOSTOL v. CITIMORTGAGE, INC., et al.                    First Amended Verified Complaint

and thereon alleges that prior to demanding payments from the Plaintiff and even after recording the NOD and NOTS, none of the Defendants or Doe Defendants had or have a secured or unsecured legal, equitable, or pecuniary interest in the Plaintiff's Note and DOT as required under California law − irrespective of who is actually in physical possession of Plaintiff's Note.   Defendant CITIMORTGAGE assumes the position as an encumbrancer of Plaintiff's real property under California law in violation of California's statutory law.

87. Plaintiff is informed, believes and thereon alleges that there was no effective assignment or other documentation that would confirm that U.S. BANK, as Trustee for the CMLTI 2007-AMC2, or any other entity validly acquired the full and unencumbered interest in the mortgage loan from original lender ARGENT MORTGAGE or its undocumented successor(s); or that the original lender ARGENT MORTGAGE validly assigned the DOT and transferred the original mortgage Note to any of these defendants; or that any of the defendants actually took possession and ownership of the mortgage loan from any other entity.

88. The complexity of the securitization schemes of many lenders, which may or may not involve intentional obfuscation, and the very real possibility that they simply do not have or will not be able to find the paperwork (i.e., original "wet-ink" promissory note, properly completed allonge or endorsement, assignment and filing/recordation at the county recorder to perfect and maintain a valid lien) to back up their claims, makes it virtually impossible for the borrowers such as Plaintiff to eliminate the cloud on the title to Plaintiff's real estate without assistance of this court.   Plaintiff is informed and believes and thereon alleges that Plaintiff's Note was sold and resold multiple times.

89. ARGENT MORTGAGE never intended Plaintiff to pay back the loan to it because ARGENT MORTGAGE would be and was IN FACT PAID IN FULL upon funding of the loan to Plaintiff immediately upon closing or shortly thereafter. Original lender and initial loan seller ARGENT MORTGAGE and intermediary loan purchasers CGMRC and CMLTI have each been paid in full and has no further interest in the either Note or Deed of Trust, equitable or otherwise.

APOSTOL v. CITIMORTGAGE, INC., et al.                                     First Amended Verified Complaint

90.   Defendants and each of their predecessors in interest, whoever or whatever they might be, are required to comply with California's conveyance law, which mandates publicly recording the assignment(s) of the DOT and indorsement of the original note if one is a mortgagee or other encumbrancer.   The Statute of Frauds applies to assignment(s) of Plaintiff's DOT in this instant case since this is real property instrument.   If the mortgage assignment is not valid, more so without the indorsement of the underlying original note, the purported assignee in the DOT has no standing to assert an interest in the real property that stands as security for the DOT.

91.   Plaintiff is informed, believes and thereon alleges that all of the Defendants knew or through the exercise of reasonable diligence should have known of the falsity of the contents of these void, fraudulent and invalid documents (i.e., Assignments of DOT, SOT, NOD, NOTS and TDUS.)   At the time of these material misrepresentations, Defendants intended (and continue to do so) to defraud Plaintiff, and Plaintiff justifiably relied upon said misrepresentations by making payments to the alleged loan servicer CITIMORTGAGE, thereby suffering resulting damage because Plaintiff's title to his real estate was clouded, and since it is now not known who, if anyone, besides Plaintiff can claim a legal or equitable interest in Plaintiff's real property.

92.   Accordingly, Plaintiff disputes the authenticity and validity of the Assignments of the DOT and SOT; and the NOD, NOTS and TDUS that were subsequently issued by CRTS.   Plaintiff also disputes the authority of each entity or individual who executed said mortgage instruments on behalf of the Defendants, which are fraudulent, invalid and void. Because the Foreclosure Law in California must be strictly followed or the foreclosure sale is VOID, Plaintiff is informed and believes and thereon alleges that since neither the Assignment of DOT, SOT, NOD, NOTS nor the TDUS is valid, the illegal foreclosure action conducted by the Defendants was unlawful, so that there is no requirement under California law to "tender" the loan balance to a fraudulent beneficiary or alleged agent(s) for the beneficiary who are in fact strangers to the transaction in order to invalidate the foreclosure sale of Plaintiff's property.

93. Plaintiff has never been provided with any valid and legal assignment or other documentation which demonstrates and verifies that any of the Defendants acquired the full and

unencumbered interest in the mortgage loan (Note and DOT) from the original lender ARGENT MORTGAGE or its undocumented and unknown successor(s) in interest.

## FIRST CAUSE OF ACTION
## WRONGFUL FORECLOSURE

94.  Plaintiff realleges and incorporate herein by reference each and every allegation contained herein as though fully set forth herein.

95.  Defendants had both common law and statutory duties to Plaintiff. Defendants had a statutory duty to conduct themselves in strict compliance with all statutory provisions regulating their conduct. Defendants also had common law duties to treat Plaintiff fairly and to not injure either Plaintiff or his Property and to not infringe on any of Plaintiff's rights.

96.  Defendants negligently breached the duties specified herein by, among other things, negligently failing to follow statutory requirements in initiating foreclosure, and ultimately foreclosing on Plaintiff's Property. The acts and omissions include the fact that Defendants executed and recorded the Assignment(s) of DOT, SOT, NOD, NOTS and TDUS, all without having authority to do so, as the true unknown beneficiary did not authorize and/or execute said documents, nor did the true unknown beneficiary directed any of the Defendants to take any action on behalf of itself. Additionally, the Assignment(s) of DOT and SOT instrument were executed based on fraud, as more specifically pleaded in the Second Cause of Action, and thus rendering the Assignment(s) of DOT, SOT, NOD, NOTS and TDUS instruments void as a matter of law. Defendants foreclosed on Plaintiff's home property wrongfully, through the use of both fraudulent, as well as invalid, documents, thus causing irregularities in the foreclosure sale, which effectively void the Assignment(s) of Deed of Trust and SOT, and hold ineffective the other aforementioned documents valid. These fraudulent and invalid documents prejudicially harmed the Plaintiff, as Defendants that were neither the true beneficiary, nor agents of the true beneficiary, foreclosed on and subsequently sold Plaintiff's home.

97.  Defendants' acts are also in violation of California's non-judicial foreclosure scheme as codified under §2924 et seq. Specifically:

a.  The Assignment(s) of the Deed of Trust executed by Defendants CITI RESIDENTIAL

APOSTOL v. CITIMORTGAGE, INC., et al.                    First Amended Verified Complaint

1    LENDING, MERS and CITIMORTGAGE, where not one of these defendants has legal standing,

2    purportedly appointing CRTS as substitute trustee in the Plaintiff's DOT.

3        b.   The NOD issued by invalid mortgage Trustee, CRTS, initiating the foreclosure was

4    recorded in the name of an unknown party or not the true "beneficiary" at the time.

5        c.   Under California law the NOD which initiated the foreclosure on behalf of a party who is

6    not a *true beneficiary at the time of filing the NOD* is void *ab initio*, rendering any subsequent

7    foreclosure based on that NOD void as well. That is exactly the case here.

8        d.   As a separate ground for invalidation of the foreclosure - the entire chain of recorded

9    documents is predicated on the basis that Defendants CITI RESIDENTIAL LENDING, MERS and

10   CITIMORTGAGE had a recognizable legal interest in the Plaintiff's DOT, which was not the case

11   here. As detailed hereinbefore, Plaintiff believes and alleges that each of these Defendants acted on

12   its own, without any authority and agency relationship with the "unknown" and "undocumented"

13   true beneficiary and real party in interest, when it assigned the Plaintiff's mortgage on January 13,

14   2009 and again on March 14, 2011, more so without the intervening indorsement of the underlying

15   original mortgage Note. Following the broken chain through to conclusion, this means the NOD,

16   NOTS and TDUS that were issued by CRTS, who is not a valid trustee, mortgagee, beneficiary or

17   authorized agent of the unknown and undocumented true beneficiary, are each VOID. It is well

18   established that where a purported trustee without authority conducts a trustee's sale, that sale is

19   *void* as a matter of law and must be rescinded.  Defendants, collectively, refused to stop the

20   foreclosure process despite the challenge and requests from Plaintiff, and subsequently wrongfully

21   foreclosed and sold Plaintiff's home on May 15, 2012 to TURN KEY ASSET, INC. without the

22   legal authority to do so.

23       98. Defendant CRTS, not the trustee or authorized agent of the unknown and

24   undocumented true beneficiary in the DOT, initiated and completed the foreclosure proceedings on

25   Plaintiff's mortgage loan based on illegal and fraudulent assignment(s) of Plaintiff's DOT and SOT

26   instrument. CRTS knowingly filed fraudulent and invalid foreclosure documents at the behest of

27

28

APOSTOL v. CITIMORTGAGE, INC., et al.                          First Amended Verified Complaint

1    Defendant CITIMORTGAGE and thereby willfully violated the requirements of California's non-

2    judicial foreclosure statutes.

3        99.   In initiating the aforementioned illegal and fraudulent foreclosure proceedings, all and

4    each of the Defendants here acted with willful oppressiveness and malice toward the Plaintiff.

5                    **TENDER RULE NOT APPLICABLE WHEN FRAUD IS ALLEGED**

6        100.   Where a trustee's sale can be shown as unlawfully conducted and therefore void, a

7    showing of tender of amount due is rendered unnecessary. (Bank of America v. La Jolla Group II,

8    (2005) 129 Cal.App.4th 706, 712, 28 Cal.Rptr.3d 825).

9        101.   Here, as set forth above, Plaintiff alleges that the foreclosure sale is VOID, not just

10   voidable, and that it would be inequitable to require tender.

11       102.   Even assuming arguendo that Defendants could muster the sentiment of this Court to

12   side with their contentious ideology, foreclosing here would nonetheless be highly inequitable and

13   injurious beyond repair.

14       103.   Denying the Defendants' the ability to enforce these clouded and questionable

15   instruments would also find support in deferring to public policy considerations of fairness and in

16   the interests of justice.

17       104. Plaintiff suffered, and continue to suffer damages, proximately caused by Defendants

18   illegal and fraudulent foreclosure activities against him, including but not limited to the loss of his

19   real property, severe emotional distress, mortgage payments wrongfully paid to Defendant

20   CITIMORTGAGE which had no valid authority to collect such payments, increased costs and fees

21   assessed against Plaintiff associated with the foreclosure activities, legal fees to regain title of the

22   property, and inter alia, damage to his credit.  Plaintiff has been prejudicially damaged by the

23   actions of Defendants in an amount not presently ascertained and will be proven at trial. Plaintiff is

24   also entitled and seeks punitive damages against the Defendants as a result of the illegal, fraudulent

25   and willfully oppressive foreclosure activities against Plaintiff that Defendants have engaged in.

26   / / /

27   / / /

28

APOSTOL v. CITIMORTGAGE, INC., et al.                              First Amended Verified Complaint

**SECOND CAUSE OF ACTION**
**CONSTRUCTIVE FRAUD**

105.   Plaintiff realleges and incorporate herein by reference each and every allegation contained herein as though fully set forth herein.

106.   This allegation is a general allegation of reliance and damage.  It does not identify the particular acts Apostol took because of the alleged forgeries.  Similarly, it does not identify any acts that Apostoli did not take because of his reliance on the alleged forgeries.  Therefore, we conclude that Glaski's conclusory allegation of reliance is insufficient under the rules of law that require fraud to be pled specifically.  (Lazar v. Superior Court, supra, 12 Cal.4th at p. 645.)

107.   Plaintiff is informed and believes and thereon alleges that the Defendants, and each of them, in doing the things as hereinbefore alleged acted as to Plaintiff with malice and ill will, knowing that their actions would cause Plaintiff great trauma, financial and emotional suffering while subjecting Plaintiff fraudulently to the loss of his home. The conduct of the defendants was done knowingly without legal justification. Plaintiff is further informed and believes and thereon alleges that unless the callous, intentional and unlawful conduct of the Defendants, and each of them, is not punished severely with an appropriate award of exemplary and punitive damages, Defendants and each of them will continue to plague the citizens of this country with their illegal actions.

108.   On information and belief, Plaintiff alleges that CITI RESIDENTIAL LENDING, MERS or CITIMORTGAGE is not the Beneficiary in the DOT after the Plaintiff's mortgage loan was irrevocably sold on March 30, 2007 by original lender ARGENT MORTGAGE. Even though Defendants knew or should have known that original lender ARGENT MORTGAGE had already long sold the Plaintiff's mortgage loan several years earlier in the securitization transaction and ARGENT MORTGAGE's right, power and authority in the DOT had already been effectively TERMINATED at that point of mortgage loan sale, Defendants have willfully and fraudulently assigned the Plaintiff's DOT on January 13, 2009 and again on March 14, 2011. Defendants further knew they did not have Plaintiff's Note to transfer (along with the Deed of Trust).

APOSTOL v. CITIMORTGAGE, INC., et al.                    First Amended Verified Complaint

109.   In fact, Defendant CITI RESIDENTIAL LENDING no longer an existing operating entity when it allegedly acted as Attorney-in-Fact of ARGENT MORTGAGE in the first assignment of Plaintiff's DOT on January 13, 2009 (see Exhibit "B"); its parent company CITIGROUP shut down CITI RESIDENTIAL LENDING's operations on April 30, 2008. Regarding the second assignment of Plaintiff's DOT (see Exhibit "C"), MERS' principal CITIMORTGAGE was not a valid beneficiary in the Plaintiff's DOT for reasons hereinbefore cited. Therefore, MERS acted on its own without any authority and agency relationship with the true unknown beneficiary in the DOT when MERS executed the 2nd assignment of Plaintiff's mortgage on March 14, 2011. MERS knew very well that it does not have any standing and authority to assign a mortgage loan that it does not own, or as in this instant case, when MERS was in fact not a nominal beneficiary and/or nominee of the "undocumented" and "unknown" successor lender in the DOT. Therefore, MERS' mortgage assignment to CITIMORTGAGE is a fraudulent and felonious act as the beneficial interest of original lender ARGENT MORTGAGE had been extinguished on or before March 30, 2007, and that CITI RESIDENTIAL LENDING was an invalid assignee in the first assignment Plaintiff's mortgage, the instrument by which MERS' alleged right and authority as Nominee for CITIMORTGAGE in the 2nd mortgage assignment was derived from.

110.   Both mortgage assignments were also in violation of the governing Securitization Agreement and thus contractually null and void. Despite knowingly it would be a "prohibited transaction" based on the precise terms and REMIC provisions of the governing PSA, MERS willfully and fraudulently assigned the Plaintiff's mortgage to CITIMORTGAGE to cover up the irreversible broken of chain of title in the Plaintiff's mortgage loan which was the consequence of the its failed securitization.

111.   The binding terms and REMIC provisions of the governing PSA strictly prohibit U.S. BANK to purchase or accept any non-qualified (non-performing) mortgage loan on behalf of the CMLTI 2007-AMC2 after the trust's "Closing Date" on March 30, 2007. As Trustee for the MBS Trust, U.S. BANK has no requisite authority conferred upon it by the operative PSA to accept the conveyance of Plaintiff's DOT passed the MBS Trust's closing date, more so when the mortgage

APOSTOL v. CITIMORTGAGE, INC., et al.                    First Amended Verified Complaint

1    loan was allegedly a non-qualified asset (i.e., a non-performing loan on default) at the time of its

2    assignment and transfer. U.S. BANK has no power or authority to act outside of the scope of the

3    powers conferred upon the Trustee under the PSA. U.S. BANK could not take any action which

4    conflicts with the strict terms and REMIC provisions of the PSA for conveyance of mortgage loans

5    to the MBS Trust. Defendants' mortgage assignments are sham documents that constitute a clumsy

6    attempt to obscure a botched securitization.

7        112.   Defendant CITIMORTGAGE, as alleged loan servicer, held itself out as the authorized

8    agent entitled to collect mortgage payments from Plaintiff even after ARGENT MORTGAGE had

9    already sold Plaintiff's DOT and Note, and was paid for the full balance of the debt, but failed to

10   properly transfer the mortgage loan pursuant to the precise terms and REMIC provisions of the

11   governing securitization agreement. From that point forward, CITIMORTGAGE continued to act as

12   the purported servicer in the Plaintiff's loan − making false representations, with intent of inducing

13   Plaintiff into accepting that it also the valid beneficiary in the mortgage loan so Plaintiff would

14   continue to make monthly payments to CITIMORTGAGE. Plaintiff reasonably relied on such false

15   assertions to be true and made multiple and continued mortgage payments to CITIMORTGAGE,

16   believing CITIMORTGAGE to be the servicer and actual beneficiary in the mortgage. Based on

17   reliance of CITIMORTGAGE's false claims, Plaintiff was harmed by each and every mortgage

18   payment that was paid to CITIMORTGAGE. These amounts begin from the day the mortgage loan

19   was irrevocably sold by ARGENT MORTGAGE in March 2007 up to the time Plaintiff stopped

20   making monthly mortgage payments.

21       113.   Defendants knowingly caused to be filed a fraudulent NOD and NOTS against the

22   Plaintiff as neither CITIMORTGAGE as servicer nor any of the Defendants herein had a valid

23   beneficial interest in Plaintiff's loan at the time the NOD and NOTS were issued and therefore,

24   CRTS in violation of the non-judicial foreclosure statute, was without power to initiate foreclosure

25   proceedings and conduct the foreclosure sale of the Plaintiff's home property on May 15, 2012.

26       114.   Each of the Defendants herein had knowledge of the falsity of the Assignment(s) of

27   DOT, SOT instrument and intended to defraud Plaintiff. Similarly, each of the Defendants had

28

APOSTOL v. CITIMORTGAGE, INC., et al.            First Amended Verified Complaint

knowledge of the falsity of the NOD, NOTS and TDUS, and caused these documents to be filed with the intent to defraud Plaintiff.  Likewise, Defendant CITIMORTGAGE knew that it had no authority to collect mortgage payments from Plaintiff because CITIMORTGAGE was not a valid loan servicer and not the valid principal/beneficiary in the Plaintiff's mortgage loan, but nevertheless demanded and took payment from Plaintiff with intent to defraud.

115.   Plaintiff justifiably relied on Defendants' false representations and suffered harm as a direct and proximate result of these deliberately false representations.  Specifically, the issuance of the fraudulent mortgage assignment(s) and SOT instrument were necessary for the initiation and completion of their illegal foreclosure proceedings. Thus, Defendants' fraudulent acts proximately and actually allowed CRTS to conduct the foreclosure sale of the Plaintiff's home property through the use of the aforementioned fraudulent and invalid documents. The ensuing NOD, NOTS and TDUS have negatively impaired Plaintiff's creditworthiness and leading to the loss of his property title. In addition, Plaintiff suffered, and continues to suffer severe emotional distress as a result of the fraud perpetrated upon him by the Defendants.

116.   Defendants, and each of them, have acted intentionally and with malice and oppression against Plaintiff, proximately and actually causing Plaintiff harm. The aforementioned Defendants' conduct was egregious and encompassed a scheme and pattern of behavior, entitling Plaintiff to an award of exemplary and punitive damages.

### THIRD CAUSE OF ACTION
### QUIET TITLE

117.   Plaintiff realleges and incorporate herein by reference each and every allegation contained herein as though fully set forth herein.

118.   Plaintiff is the sole lawful owner of the properly commonly known as 1330 Cedar Street, Gilroy, CA  95020 (herein the "Subject Property").   The Legal Description  of the Subject Property is as follows:

> All that parcel of land in the City of Gilroy, County of Santa Clara, State of
> California, as more fully described in the document 18242347 and being
> more particularly described as followes

APOSTOL v. CITIMORTGAGE, INC., et al.                    First Amended Verified Complaint

Lot 133, as shown on that certain map entitled, "trace No. 3960 Westwood Acres Unit No. 2" which map was filed for recorded in the office of the recorder of the County of Santa Clara, State of California on March 29, 1965 in Book 192 of Maps, at pages 54 and 55.

119. Defendants have wrongfully and unlawfully transferred Plaintiff's property among themselves in violation of various state, federal and consumer protection laws with fraudulent documents filed in various courts and recorded in the Sacramento County Recorder's office. Defendants recorded fraudulent documents in the County Recorder's Office in further violation of state and federal law.   Defendants failure to legally and lawfully transfer and record the assignments and title to the property render the Notice of Default defective and the trustee conducting the foreclosure had no power or legal authority to do so.

120. Only the "Note Holder" can exercise the power of sale under the deed of trust pertaining to the Property.  It has yet to be determined the Note Holder of fact in this matter. WAMU remains the beneficiary of the Deed of Trust upon which the Notice of Default  is based. As such it is unclear if what entity are true lawful Note Holders of Plaintiff's Mortgage.

121. Likewise, the "Note Holder", i.e. Defendants, as the "Lender" must give the required notices pursuant to California Civil Code § 2924.  Failure of the actual "Note Holder" to give the required notices makes the non-judicial foreclosure proceeding defective and void.  Plaintiff was not in default to any lender.  Plaintiff sues Defendants to quiet title and to obtain the original note under rules of evidence sufficient to permit a legal determination of rightful title and to discover if the instrument was transferred by assignment or by payment and negotiation, (Owner of an instrument in question is a necessary party in order for court to cancel it. *Lawrence v. Long Beach Pleasure Pier Co., (1919) 44 Cal. App. 410, 186 P. 606).*

122. Plaintiff have been irreparably harmed and financially devastated by the acts of these Defendants, and each of them.  The Notice of Default upon which the foreclosure process has been initiated, does not reflect t a loan to which Plaintiff has ever had any obligation.

123. Plaintiff  has been harmed by the Defendants violations of law and fraudulent acts. Plaintiff continues to suffer manifest injustice as a result of Defendants unlawful acts.

APOSTOL v. CITIMORTGAGE, INC., et al.                    First Amended Verified Complaint

124.   Defendants may have securitized Plaintiff residential mortgage loan. Defendants failed to transfer the Deed of Trust in any lawful manner.  Plaintiff are informed and believes that the lawful beneficiary has been paid in full.

The DOT states in paragraph 23:

> 23.  Reconveyance. Upon payment of all sums secured by this Security Instrument, lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it…

The DOT does not state that Plaintiff must pay all sums, only that all secured sums must be paid. Plaintiff alleges that the obligations owed to any Defendant under the DOT were fulfilled and the loan was fully paid when American received funds in excess of the balance on the Note as proceeds of sale through securitization(s) of the loan and insurance proceeds from Credit Default Swaps.

125.   Defendants' claims are adverse to Plaintiff because Plaintiff are informed and believes that none of the defendants is a holder of the Note, none of them can prove any interest in the Note, and none of them can prove that the Note is secured by the DOT, as well as for the reasons set forth in the preceding causes of action. As such, Defendants have no right, title, lien, or interest in the Subject Property.  As such the Notice of Default, initiating the foreclosure process is defective and should fail.

126.   Defendants never had the legal authority to foreclose, i.e., the authority to exercise the power of sale as an assignee of the Note and Deed of Trust, because the foreclosing Defendants' interest was never acknowledged and recorded in violation of Civil Code § 2932.5, resulting in the non-judicial foreclosure sale being void ab initio.

127.   Moreover, the foreclosing Defendants never had the legal authority to foreclose because the instrument (Deed of Trust), which permitted foreclosure if the borrower was in default, is void as it was unlawfully assigned and/or transferred to the foreclosing Defendants. Therefore, the Deed of Trust could not provide a basis for a foreclosure, and the non-judicial foreclosure is void ab initio.

128.   Although the trustee's deed upon sale appears valid on its face, it is invalid, and of no legal force and effect, for the reasons set forth above including, inter alia, the fact the Deed of Trust which purportedly secured the Note, which served as the basis for a claim to have the right to conduct a non-judicial foreclosure was at all times void due to the wrongful and improper assignment to the Foreclosing Defendants.

129.   Plaintiff is therefore entitled to an order that the Trustee's Deed Upon Sale is void ab initio and cancelling such VOID Trustee's Deed.

**FOURTH CAUSE OF ACTION**
**FAILURE TO COMPLY WITH CONDITIONS PRECEDENT**
**(Paragraphs 22 and 23 – DEED OF TRUST)**

130.   Plaintiff realleges and incorporate herein by reference each and every allegation contained herein as though fully set forth herein.

131.   Defendants breached and failed to meet conditions precedent in the Deed of Trust at Paragraphs 22 and 23.  When parties enter a "contract" such as a Note or Deed of Trust, there are certain conditions in those agreements that must be met; if those conditions are not met, they can result in a "breach of contract".   In this matter at bar, Defendants failed to meet conditions precedent in Paragraph 22, of the Deed of Trust.  See, Exhibit B, at page 20 of 27, Paragraph 22, which states in pertinent part:

> 22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.
>
> If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a

41

written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to) reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

Plaintiff alleges herein that Defendants breached the conditions precedent in paragraph 22 by failing to follow the clear conditions defined therein.

132.   Defendants breached and failed to meet conditions precedent in the Deed of Trust at Paragraph 23. See, Exhibit B, at page 20 of 27, Paragraph 23, which states in pertinent part:

23. Reconveyance. Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

Plaintiff allege that Defendants failed to meet the conditions precedent of Paragraph 23 of the Deed of Trust by securitizing the loan before the first payment is made and failing to so advise Plaintiff. Furthermore, Defendants have been paid in full for the security instrument many times over and seek to be further unjustly enriched by stealing Plaintiff' home utilizing methods that are in bold and clear violation of both state and federal law. Plaintiff suffer manifest injustice in these matters.

133. *In Richard Mathews, et al v PHH Mortgage Corporation*, Record No. 110968 (April 20, 2012) the bank argued that the Mathews first failed to meet the terms of the agreement by failing to make payments and that according to Virginia common law, the breaching party cannot

APOSTOL v. CITIMORTGAGE, INC., et al.                    First Amended Verified Complaint

enforce the contract. The Trial Court agreed with PHH; HOWEVER, the Court of Appeals disagreed and REVERSED in favor of Mathews. Here is an excerpt from their legal reasoning:

> Nevertheless, the Mathews argue that under *Bayview Loan Servicing, LLC v. Simmons*, 275 Va. 114, 654 S.E.2d 898 (2008), a lender must comply with all conditions precedent to foreclosure in a deed of trust even if the borrowers are in arrears. We agree.

> In Bayview, the borrower was in arrears. Consequently, the lender accelerated repayment under the note and directed the trustee under the deed of trust to begin foreclosure proceedings. Thereafter, the parcel was sold at a foreclosure auction and the borrower filed a suit for damages alleging breach of the deed of trust. Id. at 117–18, 654 S.E.2d at 899. We determined that the sale was improper because Bayview had failed to provide a pre-acceleration notice, which was a condition precedent to acceleration under the deed of trust. By failing to provide the notice, Bayview breached the deed of trust by accelerating repayment and foreclosing:

> Because Bayview did not comply with the specific condition precedent under the Deed of Trust, prior to the notice of foreclosure sale by [the trustee], Bayview had not acquired the right to accelerate payment under the terms of the Deed of Trust. Thus, [the trustee] could exercise no right of acceleration because no such right had then accrued to Bayview .

> While Code § 55–59.1(A) does allow a proper notice of foreclosure sale to exercise an accrued right of acceleration, Bayview failed to fulfill the contractual condition precedent that would have given it such a right.

Plaintiff properly alleges this fact pattern is evident in the matter at bar. Defendants failed to comply with specific condition precedent under the Deed of Trust, therefore Defendants are not entitled to take default or further action against Plaintiff. Furthermore, Defendants compound violations of federal laws by failing to notify Plaintiff of their rights under RESPA, TILA and other state laws as properly alleged herein.

134. Therefore, no Defendant has lawful standing to commence foreclosure proceedings against Plaintiff. Defendants conspired to record fraudulent documents and claim default where there is none, to the detriment of Plaintiff and their family. The effect the wrongful and unlawful foreclosure and subsequent eviction and based upon fraudulent documents, not only violate RESPA and other state and federal laws, but will result in Plaintiff suffering manifest injustice as a direct and proximate result of Defendant's bad faith and unlawful acts. Defendants will become unjustly enriched to the detriment of Plaintiff and her family.

**FIFTH CAUSE OF ACTION**
**VIOLATION OF CALIFORNIA CIVIL CODE SECTION 2934(a)(1)(A)**

135.   Plaintiff realleges and incorporate herein by reference each and every allegation contained herein as though fully set forth herein.

136.   California Civil Code §2934(a)(1)(A) provides that all beneficiaries must execute the Substitution of Trustee and such document must be recorded to be effective, and if not, the resulting sale is void.  Section 2934(a)(1) further provides that the trustee under a trust deed upon real property or an estate for years therein given to secure an obligation to pay money and conferring no other duties upon the trustee than those which are incidental to the exercise of the power of sale therein conferred, may be substituted by the recording in the county in which the property is located of a substitution executed and acknowledged by: (A) all of the beneficiaries under the trust deed, or their successors in interest…." [Emphasis added].

137.   Civil Code section 2924, subdivision (a)(1) states that a "trustee, mortgagee, or beneficiary, or any of their authorized agents" may initiate the nonjudicial foreclosure process. This statute and the provision of the Apostol deed of trust are the basis for Apostol's position that the nonjudicial foreclosure in this case was wrongful—namely, that the power of sale in the Apostol deed of trust was invoked by an entity that was not the true beneficiary.

138.   Plaintiff is informed and believes and thereon alleges that it is clear, specifically in this case, that there can be no valid non-judicial foreclosure where the trustee under the original deed of trust allegedly acting on behalf of the encumbrancer of Plaintiff's real property is not properly substituted with a "recorded" document.  Furthermore, all beneficiaries, known and unknown, did not effectively execute the Substitution of Trustee. Therefore, any trustee's sale is void.

**SIXTH CAUSE OF ACTION**
**VIOLATION OF THE TRUTH-IN-LENDING ACT**
**15 U.S.C 1601 *et seq*.**

139.   Plaintiff realleges and incorporate herein by reference each and every allegation contained herein as though fully set forth herein.

140.   Defendant violated the Federal Truth-in-Lending Act 15 U.S.C 1601 et seq. (hereinafter "TILA").

44

141.   No documents are recorded reflecting any defendant as the lawful lender in due courts. The Notices of Default and Foreclosure are each fraudulent and defective.   As such, the foreclosure is fraudulent and void.

142.   Defendants are not entitled to foreclosure procedures, which Defendants are not entitled to initiate, participate in, benefit or conduct.   See, United States v. Detroit Timber & Lumber Co., 200 U. S. 321, 337.  The Fair Debt Collection Practices Act (FDCPA), 15 U. S. C. §1692 et seq., imposes civil liability on "debt collector[s]" for certain prohibited debt collection practices. A debt collector who "fails to comply with any [FDCPA] provision . . . with respect to any person is liable to such person" for "actual damage[s]," costs, "a reasonable attorney's fee as determined by the court," and statutory "additional damages." §1692k(a). In addition, violations of the FDCPA are deemed unfair or deceptive acts or practices under the Federal Trade Commission Act(FTC Act), §41 et seq., which is enforced by the Federal Trade Com-mission (FTC). See §1692l. A debt collector who acts with "actual knowledge or knowledge fairly implied on the basis of objective circumstances that such act is [prohibited under the FDCPA]" is subject to civil penalties enforced by the FTC.

143.   Defendants, and each of them, have filed documents Defendants knew or reasonably should have known to contained fraudulent information with the court and/or with the Santa Clara County Recorder's Office.   Defendants appear at bar with unclean hands and documents they know or reasonably should have known to be fraudulent.

**SEVENTH CAUSE OF ACTION:**
**VIOLATION OF BUSINESS AND PROFESSIONS**
**CODE SECTION 17200, *et seq.***

144.   Plaintiff realleges and incorporate herein by reference each and every allegation contained herein as though fully set forth herein.

145.   California Business & Professions Code Section 17200, et seq., prohibits acts of unfair competition, which means and includes any "fraudulent business act or practice . . ." and conduct which is "likely to deceive" and is "fraudulent" within the meaning of Section 17200.

146.   As more fully described above, the Foreclosing Defendants' acts and practices are likely to deceive, constituting a fraudulent business act or practice.  This conduct is ongoing and continues to this date.

147.   Specifically, the Foreclosing Defendants engage in deceptive business practices with respect to mortgage loan servicing, transfer and assignment of notes and deeds of trust, foreclosure of residential properties and related matters by

(a)  Assessing improper or excessive late fees;

(b)  Improperly characterizing customer's account as being in default or delinquent status to generate unwarranted fees;

(c)  Instituting improper or premature foreclosure proceedings to generate unwarranted fees;

(d)  Misapplying or failing to apply customer payments;

(e)  Failing to provide adequate monthly statement information to customer regarding the status of his accounts, payments owed, and/or basis for fees assessed;

(f)  Seeking to collect, and collecting, various improper fees, costs and charges, that are either not legally due under the mortgage contract or California law, or that are in excess of amounts legally due;

(g)  Mishandling borrower's mortgage payments and failing to timely or properly credit payments received, resulting in late charges, delinquencies or default;

(h)  Treating borrower as in default on his loans even though the borrower has tendered timely and sufficient payments or has otherwise complied with mortgage requirements or California law;

(i)  Failing to disclose the fees, costs and charges allowable under the mortgage contract;

(j)  Ignoring grace periods;

(k)  Executing and recording false and misleading documents; and

(l)  Acting as beneficiaries and trustees without the legal authority to do so.

46

APOSTOL v. CITIMORTGAGE, INC., et al.                    First Amended Verified Complaint

148.   The Defendants fail to act in good faith as they claim fees for services but do not render same services competently and in compliance with applicable law.

149.   Moreover, the Defendants engage in a uniform pattern and practice of unfair and overly-aggressive servicing that result in the assessment of unwarranted and unfair fees against California consumers, and premature default often resulting in unfair and illegal foreclosure proceedings.   The scheme implemented by the Defendants is designed to defraud California consumers and enrich the Defendants.

150.   The foregoing acts and practices have caused substantial harm to California consumers. As a direct and proximate cause of the unlawful, unfair and fraudulent acts and practices of the Defendants, Plaintiffs and California consumers have suffered and will continue to suffer damages in the form of unfair and unwarranted late fees and other improper fees and charges.

151.   By reason of the foregoing, the Defendants have been unjustly enriched and should be required to disgorge their illicit profits and/or make restitution to Plaintiff and other California consumers who have been harmed, and/or be enjoined from continuing in such practices pursuant to California Business & Professions Code Sections 17203 and 17204.   Additionally, Plaintiff is therefore entitled to injunctive relief and attorney's fees as available under California Business and Professions Code Sec. 17200 and related sections.

152.   Plaintiff alleges that Defendants' conduct is immoral, unethical, oppressive, unscrupulous or substantially injurious to Plaintiff and requires this Court to weigh the utility of the Defendants' conduct against the gravity of the harm to Plaintiff.

153.   Plaintiff suffered and is suffering and will continue to suffer injury and financial ruin as a direct and proximate result of Defendants deceptive acts as alleged above.   Plaintiff is entitled under the Business and Professions Code Section 17200 to equitable remedy of restitution (i.e. disgorgement) of all money, property and benefits wrongfully obtained by Defendants (Plaintiff's Deed of Trust, etc.).

154.   The foregoing acts and omissions of Defendants affect trade and commerce as that term is defined under the Unfair Practices Act ("UPA").

155.   The UPA defines unfair competition to include any unlawful, unfair, or fraudulent business act or practice and provides that a court may order injunctive relief and restitution to affected parties as a remedy for any violations of the UPA.

156.   Beginning on the dates indicated and at all times relevant herein, Defendants and the DOE Defendants have committed acts of unfair competition proscribed by the UPA including the acts and practices against Plaintiff alleged herein.

157.   Plaintiff continues to suffer manifest injustice in these matters.  Defendants continue in their acts in clear violation of both state and federal law.

158.   Plaintiff is a "person" within the meaning and intent of C.C.P. §1060.  There is an actual controversy, as Defendants commenced an illegal foreclosure action on Plaintiff's real property. Plaintiff was not provided with any evidence that any of the Defendants has full and unencumbered legal title to both the Note and DOT and there is no evidence of any effective assignment of either the Note or the DOT by the original lender to any entity.

159.   C.C.P. §1062 provides that the remedies provided by the chapter are cumulative and shall not be construed as restricting any remedy, and further this chapter shall not preclude any party from obtaining additional relief based on the same facts.  C.C.P. §1062.3 provides that actions brought under this chapter shall be set for trial at the earliest possible date and shall take the precedence over all other cases except older matters of the same character and matters to which special precedence may be given by law.

160. In that the Defendants completed an illegal Trustee's Sale of the Plaintiff's Property, and CRTS thereafter recording a Trustee's Deed Upon Sale ("TDUS") transferred the Property title to TURN KEY ASSET, INC. and dispossessed Plaintiff of his real property and evicted him and his family from their home.

161. Due to the dispute as to the rights and interests of the parties to the Subject Property, Plaintiff requests that the Court declare the rights of the parties in this matter.  Plaintiff requests that the Court enforce these rights with the issuance of injunctions or restraining orders as may be

necessary to place the parties in their proper position with respect to their interests, if any, in the Subject Property.

<strong>PRAYER</strong>

**WHEREFORE**, Plaintiff prays for judgment against the Defendants and each of them as hereinafter set forth:

1.  For an order deeming the recorded Trustee's Deed Upon Sale as VOID;

2.  For judgment that Plaintiff is the sole  rightful holder of rights and  title to the Subject Property that Defendants, each of them, have no estate, right, title or interest in the Subject Property;

3.  For an order that there was never any proper legal assignment of the full and unencumbered legal interest in both the Notes and Deeds of Trust from the original lender to any Defendant herein or any entity;

4.  For an order or judgment that no Defendant herein has any legal rights in either the Note or DOT, deeming said instruments as VOID and cancelling said instruments;

5.  For an order compelling said Defendants, and each of them, to unwound the illegal foreclosure and transfer legal title and possession of the subject property back to Plaintiff herein;

6.  For an order or judgment that the Assignment(s) of the Deed of Trust, Substitution of Trustee instrument, Default and Foreclosure Notices, and Trustee's Deed Upon Sale are each defective fraudulent documents and must be cancelled and removed from the public records in the Santa Clara County Recorder's Office as VOID documents and that necessary steps are taken to execute a full deed of reconveyance of the Deed of Trust in favor of Plaintiff;

7.  For an Order that the Defendants have no standing and legal right to re-institute any foreclosure proceedings against Plaintiff's real property;

8.  For a declaration that the foreclosure by Defendants against Plaintiff's real property is illegal and said wrongful foreclosure be unwound by Defendants.

1    9.      Plaintiff further requests the court to issue an Order for Defendants, and each of them,

2    to remove and cure all reports based upon fraudulent documents Defendants made to all Credit

3    Reporting Agencies which are derogatory to Plaintiff's credit standing.

4    10.     For general, compensatory and special damages

5    11.     Attorney's fees and costs according to proof; and

6    12.     For and all further relief as this court deems fair, just and proper.

7    DATED: August 19, 2013

8                                          //s/Mark W. Lapham_____
                                           Mark W. Lapham
9                                          Attorney for Plaintiff,
                                           OBED APOSTOL, JR.

APOSTOL v. CITIMORTGAGE, INC., et al.                    First Amended Verified Complaint

**VERIFICATION**

I, Obed Apostol, Jr., declare as follows:

I am the Plaintiff in this action, and I hereby declare I have read the foregoing Verified First Amended Complaint and know the contents thereof and believe that the matters stated therein are true of my own knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters, I believe them to be true.

I hereby declare under the penalty of perjury, under the laws of the State of California that the foregoing is true and correct and this verification was executed this 20th day of August, 2013 at Gilroy, California.

//s/Obed Apostol, Jr._____
Obed Apostol, Jr.

APOSTOL v. CITIMORTGAGE, INC., et al.                    First Amended Verified Complaint