# Rich Decl.

# Exhibit 3

Kristin L. Crone (SBN #269679)
UFAN Legal Group, PC
1911 Douglas Blvd, Suite 85-PMB245
Roseville, CA 95661
Tel: (916) 800-2375
Fax: (916) 313-3570
kristin@theufan.com

Attorney for Plaintiff

FILED

2012 DEC 19 PM 2:11

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY: _____

# UNITED STATES DISTRICT COURT
## CALIFORNIA CENTRAL DISTRICT – WESTERN DIVISION

|  |  |
|---|---|
| OBED APOSTOL JR., an individual;<br><br>          Plaintiff,<br>     vs.<br>CITIBANK, N.A.;<br>CITIMORTGAGE, INC.;<br>and DOES I – XX, inclusive,<br><br>          Defendant. | Case No.: 2:12-cv-04395-PSG-SHx<br><br>**SECOND AMENDED COMPLAINT FOR DAMAGES, INJUNCTIVE AND DECLARATORY RELIEF**<br><br>1. **Violation of RESPA**<br>2. **Intentional Infliction of Emotional Distress**<br>3. **Negligence (servicing);** |

Plaintiff, and each of them, hereby demand a jury trial and allege as follows:

## PRELIMINARY STATEMENT

1.     Although the usual rule is lender non-liability, it cannot be said that a lender never has a duty to a borrower.  If a borrower walks into a branch of Defendant and slips and falls on a wet floor, Defendant could be liable for the borrower's injuries.

2.     In the same way, Plaintiff was damaged by Defendant's negligent acts during the servicing of his loan related to the property commonly referred to as 1330 Cedar Ct., Gilroy, CA 95020 ("Subject Property").  Defendant undertook to service and modify

389

Plaintiff's loan and then failed to properly process Plaintiff's paperwork and communicate with Plaintiff about the status of his loan and his modification.

3.     After the recent collapse of the U.S. financial system, loan servicers including Defendant began offering modification services to distressed borrowers who could not afford the highly volatile, often changing payments far in excess of the current value of their properties.

4.     Defendant is not acting as a traditional lender as the loan servicer no longer holds an ownership interest in the loan or the property as does a traditional lender.  The loan servicer no longer has the risk of default or loss associated with foreclosure.  Different lender motivations apply.

5.     On information and belief, Plaintiff's loan was securitized.  Citi, at all times relevant herein, was acting only as the loan servicer.

6.     Once Plaintiff was in default, Defendant agreed to consider Plaintiff for modification, but put up significant obstacles during the modification process which deprived Plaintiff of the opportunity for modification and caused Plaintiff damages including but not limited to lost wages from time off of work required to comply with repeated document requests, severe emotional stress and anxiety resulting from pending foreclosure, and lost opportunity to take advantage of other legal remedies available to Plaintiff such as bankruptcy and deed in lieu of foreclosure.

7.     Defendant agreed to provide these services both by agreeing to participate in government sponsored programs such as HAMP and by developing internal modification programs which it agreed to apply to Plaintiff's loan.

8.     These programs were specifically intended for the benefit of borrowers including Plaintiff herein.

9.     According to the court in *Garcia v. Ocwen Loan Servicing, LLC,* 2010 WL 1881098:

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

"Based on the [factors in *Nymark v. Federal Heart Savings Assocation,* 231 Cal. App. 3d, 1098], arguably [Defendant] owed Plaintiff a duty of care in processing Plaintiff's loan modification application, as at least five of the six factors weigh in favor of finding a duty of care.

"The transaction was unquestionably intended to affect Plaintiff.  The decision on Plaintiff's loan modification application would determine whether or not he could keep his home.

"The potential harm to Plaintiff from mishandling the application processing was readily foreseeable:  the loss of an opportunity to keep his home was the inevitable outcome.  Although there was no guarantee the modification would be granted had the loan been properly processed, the mishandling of the documents deprived Plaintiff of the possibility of obtaining the requested relief.

"The injury to Plaintiff is certain, in that he lost the opportunity of obtaining a loan modification and application his home was sold.

"There is a close connection between Defendant's conduct and any injury actually suffered because, to the extent Plaintiff otherwise qualified and would have been granted a modification, Defendant's conduct in misdirecting the papers submitted by Plaintiff directly precluded the loan modification application from being timely processed.

"The existence of a public policy of preventing future harm to home loan borrowers is shown by recent actions taken by both the state and federal government to help homeowners caught in the home foreclosure crisis.  *See, e.g.,* CAL. CIV. CODE § 2923.6 (encouraging lenders to offer loan modifications to borrowers in appropriate circumstances); *see also,* Press Release at http://gov.ca.gov/press-release/14871 ("Gov. Schwarzenegger Signs Legislation to Provide   Greater   Assistance   to   California   Homeowners"),   and

SECOND AMENDED COMPLAINT FOR DAMAGES, INJUNCTIVE AND DECLARATORY RELIEF
Page **3**

MakingHomeAffordable.gov (describing the federal "Making Home Affordable Program")."

10.     In the interests of perfect clarity, Plaintiff does not argue that Defendant had a duty to consider him for modification or to approve him for modification.  Plaintiff argues that once Defendant agreed to consider Plaintiff for a modification that would provide him relief, it had a duty to do so with due care.

11.     Plaintiff argues that the HAMP agreement and other legislation could reasonably be used to set the standard of care.

12.     Defendant breached this duty by not properly training staff in its modification department and not setting up proper procedures for document processing.

13.     These breaches caused significant obstacles for Plaintiff.  Plaintiff was given conflicting information related to his loan status and the status of his modification applications.   Plaintiff would often sit on hold four hours being transferred from department to department – never getting the information he sought.

14.     This break-down in communication was even more detrimental to Plaintiff in light of the fact that he was placed in a highly predatory loan with complex terms and volatile payments.  He could not get the answers he sought about the often increasing payments.

15.     Plaintiff submitted modification paperwork according to the specific instructions of Defendant's employees, but the paperwork was regularly not received or was lost.  The documentation demanded was prolific and took hours to compile.  This caused Plaintiff significant time away from work.

16.     Additionally, because Plaintiff was in default during the modification process, Plaintiff faced foreclosure each and every month.  Faced with potential eviction and homelessness, combined with a lack of communication, Plaintiff suffered severe emotional distress and anxiety.

17.     Various federal and state legislation requires communication between loan servicers and borrowers.   Specifically, Plaintiff alleges that Defendant regularly and

routinely violated the Real Estate Settlement Procedures Act ("RESPA") 12 U.S.C. § 2601 *et seq.* in the following ways:  Defendant was required to comply with Section 6 of RESPA appearing at 12 U.S.C. §2605.  Section 6 violations are further defined by Regulation X and 24 C.F.R. § 3500.21 (e) as "Duty of loan servicer to respond to borrower inquiries."

18.     Defendant has shown repeatedly that, although it purported to work with Plaintiff on loan modifications, it was really only causing Plaintiff to send in the same prolific paperwork over and over again only to deny a valid modification and move forward with foreclosure despite Plaintiff qualifications.

19.     Furthermore, Defendant undertook to properly consider borrowers, including Plaintiff, who might qualify for the Home Affordable Modification Program (hereinafter "HAMP") for modification when it signed the HAMP servicing contract and became a participating servicer.

20.     While Plaintiff does not argue that they have a right to enforce the HAMP contract as third party beneficiaries, Plaintiff suggests that the HAMP guidelines might be a reasonable standard for the duty of care.

21.     Additionally, Plaintiff argues that by executing the HAMP contract, Defendant undertook to modify Plaintiff's loan.

22.     Under the HAMP contract, there are many requirements for participating servicers. The servicers are given guidelines to identify and contact potential HAMP borrowers. The servicers are required to provide sufficient staffing and staff training to implement the program.  The servicers are given specific guidelines to determine which borrowers qualify for HAMP.  And, finally, servicers are given guidelines as to the terms that are to be offered to qualified borrowers.

23.     Plaintiff was faced with frequently changing payments he did not understand. When he called for an accounting, he was given the run-around.  He was given a list of

fees he did not believe to be accurate.  Yet, the bank would not justify the fees it is charging or the amount it says is due.

24.      Because of these willful and negligent behaviors, Plaintiff has been injured. Plaintiff has suffered severe emotional distress, loss of the opportunity for modification, loss of the opportunity to pursue other available legal action, loss of investments and equity in his property, loss of the family business, loss of credit, and public embarrassment with the publishing of foreclosure notices.

25.      Before Congress in 2010, former Federal Reserve Chairman Alan Greenspan admitted he was in "a state of shocked disbelief" that lenders had failed to regulate themselves.

## PARTIES

### Plaintiff

26.      Plaintiff **OBED APOSTOL JR.** is an individual residing in the State of California, with rental property located at 1330 Cedar Court, Gilroy, CA 95020. Mr. Apostol refinanced his mortgage with Argent Mortgage Company, LLC in 2006, as evidenced by the Deed of Trust recorded in Santa Clara County on October 6, 2006. Mr. Apostol receives all communications regarding his mortgage, including his monthly statements, from CitiMortgage, Inc. When Mr. Apostol acquired his loan in 2006, he worked with a broker named Azucena (Sandy) Zipagan. The broker did not explain anything  about the terms of the loan, and rushed him into signing.

27.      Later, Mr. Apostol had another broker review the documents and he was informed that Sandy took advantage of him. Despite his good credit and steady income, Mr. Apostol was put into a negative amortization ARM loan with the *initial* interest rate of 6.675%.

28.      Mr. Apostol did not know that the mortgage could be transferred to groups of investors with varying interests in the performance of the loan.  Further, he did not know that such a transfer could increase risk under the contract by disconnecting loan servicing from loan ownership.

29.     When the economic crisis severely and unforeseeably altered his financial circumstances, Plaintiff Obed Apostol Jr. sought a loan modification.  Citi agreed to consider him for modification.

30.     Yet, he has applied for a modification several times to no avail. Mr. Apostol has repeatedly tried to contact Citi. When Mr. Apostol calls Citi, he is transferred from person to person and department to department. Each time, Mr. Apostol speaks to a different person and has to explain his situation all over again because there is no record in their system of previous conversations.  Mr. Apostol is repeatedly told to resubmit the same paperwork time and time again.

31.     Citi's mishandling of Mr. Apostol's loan has caused severe anxiety and emotional distress. He now lost his rental property to foreclosure, which was a business for him.  He has lost significant income from the time he has spent trying to work with Citi, and now from the loss of his income property.  His credit has been severely damaged, which has affected his ability to get other lines of credit.  He also now has an unlawful detainer judgment on his record, even though he was never in physical possession of his property, which will impede his ability to rent property in the future.  He has been publicly embarrassed with the publication of foreclosure notices.

**Defendant**

32.     On information and belief, CitiMortgage, Inc. is a wholly owned subsidiary of CitiBank, N.A.

33.     On information and belief, Citi Financial Mortgage, Co. is a wholly owned subsidiary of CitiBank, N.A.  Citi Financial Mortgage, Co. originated the loan on the property of Plaintiff Edward Ferguson.

34.     CitiBank, N.A. ("Citi") is a national banking association with its principal place of business in New York, New York and its headquarters in Sioux Falls, South Dakota.

35.     For all Plaintiff's herein, some division of CitiBank is acting as the loan servicer and/or the current note holder.  All entities wholly owned by CitiBank will be collectively

referred to as "Citi" herein.

36.     On information and belief, Argent Mortgage Company, LLC ("Argent") is a limited liability company incorporated in Delaware and its principal place of business in Orange, CA.  Argent originated the loan for the property of Plaintiff Obed Apostol, Jr.

37.     The true names and capacities, whether individual, corporate, associate or otherwise, of Defendant DOES 1 through 100, inclusive, and each of them, are unknown to Plaintiff at this time, and Plaintiff therefore sues said Defendants by such fictitious names.  Plaintiff alleges, on information and belief, that each Doe Defendant is responsible for the actions herein alleged.  Plaintiff will seek leave of Court to amend this Complaint when the names of said Doe Defendants have been ascertained.

38.     Plaintiff believes and thereon alleges that all times herein mentioned DOES 1-100 were agents and/or employees of Citi, and in taking the actions hereinafter alleged, were acting within the course, scope and purpose of such agency and employment and were acting with the consent and permission of Citi.

39.     Plaintiff is informed, believes, and thereon alleges, that at all times mentioned herein, each and all of the aforementioned Defendants, including the unknown Defendants, are responsible in some manner, either by act or omission, strict liability, fraud, deceit, fraudulent concealment, negligence, respondent superior or otherwise for the occurrences herein alleged, and that the Plaintiff's injuries, as herein alleged, were directly or proximately caused by the conduct of Defendants.

40.     Whenever in this Complaint an act or omission of a corporation or business entity is alleged, the said allegation shall be deemed to mean and include an allegation that the corporation or business entity acted or omitted to act through its authorized officers, directors, agents, servants, and/or employees, acting within the course and scope of their duties, that the act or omission was authorized by corporate managerial officers or directors, and that the act or omission was ratified by the officers and directors of the corporation or business entity.

1

2                              **JURISDICTION AND VENUE**

3      **Jurisdiction**

4      41.    Defendant has such "substantial, continuous, or systematic" contacts with

5      California as to have general personal jurisdiction.

6      42.    When a Defendant is subject to general personal jurisdiction, he may even be sued

7      on causes of action unrelated to his activities within the state. *Perkins v. Benguet*

8      *Consolidated Mining Co.*, 342 US 437 (1952).

9      43.    Furthermore, three of the four Notes subject to this litigation were executed in

10     California and the associated Deeds of Trust secure real property located in California.

11     44.    Not all Plaintiff herein are California residents and some Plaintiff request action in

12     regard to property located outside of California.  If all the property owners are before the

13     court, California courts may affect rights in property outside the state if the state finds

14     personal jurisdiction over the Defendant. *Fall v. Eastin,* 215 US 1, 7 (1909).

15     45.    In the mortgage crisis, California was one of the hardest hit states in the nation.

16     California has an interest in protecting its citizens from the poor business practices of

17     these major lenders leading to the subprime mortgage crisis.

18     **Venue**

19     46.    The California County with a substantial number of Plaintiff and properties

20     included in this suit is Los Angeles.  Therefore, venue is proper in Los Angeles County

21     Superior Court.

22

23                                  **GENERAL FACTS**

24     47.    Paragraphs 1 through 46 and the paragraphs following this cause of action are

25     incorporated by reference as though fully set forth herein.

26     48.    When Plaintiff attempted to communicate with Defendant regarding loan status,

27     monthly payments, or status of modification applications, Plaintiff's calls were often

28

transferred from department and eventually lost.  Plaintiff was unable to obtain answers to his questions.

49.     Representatives could never provide Plaintiff with information about his loan.

50.     When information was provided, it was often conflicting with other correspondence Plaintiff had with Defendant.

51.     Because of subprime lending and securitization, Plaintiff's monthly payment amount changed regularly.  Because the payment amount is subject to a complex financial equation and regularly changes, it is important that borrowers, including Plaintiff herein, have a reliable means of communicating with the lender and learning of any changes to their mortgage payments.

52.     Also, because of the subprime mortgage crisis and the economic decline, Plaintiff has faced hardship.

53.     Government programs were enacted to provide relief to distressed borrowers, including Plaintiff herein.  One such government program is the HAMP program.

54.     Defendant, as a servicer, signed a contract with the government agreeing to comply with the HAMP program in exchange for TARP funds.

55.     On information and belief, Defendant has not complied with the requirements of HAMP in the processing of Plaintiff's modification applications.

56.     By signing the HAMP contract, Defendant undertook to consider Plaintiff's loan according to the HAMP guidelines.

57.     Defendant further undertook to validly consider and properly process Plaintiff's loan when it agreed to do so directly with the Plaintiff.

58.     On information and belief, Plaintiff qualified for a HAMP modification but was denied valid consideration for modification.

59.     By doing so, Defendant denied Plaintiff the opportunity for modification.

60.     Plaintiff was also damaged by the loss of the opportunity to take advantage of other legal avenues for relief that may have helped him keep his property or could have mitigated damage to his credit.

61.     Defendants indicated an intent to work with Plaintiff through loan modification. But, Plaintiff encountered huge obstacles placed by Defendants' employees.

62.     Plaintiff was first asked to submit a plethora of paperwork.  A month or two later, the Plaintiff was told he must resubmit the same, but updated, plethora of paperwork.

63.     Defendant's loss mitigation employees state that they did not receive the paperwork or that it was lost.  Plaintiff always followed the submission instructions given him precisely.

64.     Plaintiff has been required to submit updated paperwork every month for years only to be denied the loan modification.

65.     Although Plaintiff complied with Defendant's instructions precisely, his documents were often not received or lost.

66.     Plaintiff, subject to this treatment, lost wages from time away from work attempting to comply with Defendant's demands.

67.     Plaintiff also lost the opportunity for modification.

68.     This process caused Plaintiff severe stress and anxiety.

69.     Plaintiff has been foreclosed and has lost the family business.

70.     On information and belief, Plaintiff qualified for modification.

71.     Plaintiff has suffered loss of credit.  Plaintiff has suffered severe emotional distress.

72.     Plaintiff, while noting that Defendant is not required to modify the loans, relied on the promise to receive valid consideration for modification and fell behind on payments.

73.     Plaintiff did not receive the consideration he was promised.

74.     Plaintiff quickly realized that Defendant was not acting in good faith when he faced significant challenges as described above.

75.     A loan servicer's purpose and function is to be the point of contact for borrowers and to collect monthly payments from borrowers.  The servicer is set up to notify borrowers of changes in monthly payments and to communicate with borrowers about their loans.  These services are clearly intended to affect borrowers, including Plaintiff herein.

76.     Furthermore, the HAMP program and other modification programs were instituted to assist struggling borrowers, including Plaintiff herein.

77.     The purpose of modification programs, both internal and government sponsored, is to assist homeowners in keeping their homes.

78.     Defendant demanded that Plaintiff pull together information packets that required significant time and energy to compile.

79.     On information and belief, Defendant did not have a proper system in place for receiving that paperwork resulting in frequently lost or, in the words of Defendants, "not received" paperwork.

80.     Because this paperwork was time sensitive, Plaintiff was required to compile an updated plethora of paperwork each time the paperwork was misplaced.

81.     An improper denial for modification will clearly result in borrowers, including Plaintiff herein, losing their unique real properties and all of the equity and investment therein through foreclosure.

82.     The specific facts relating to each Plaintiff and the resulting injury are set forth below and incorporated herein by this reference.

///

///

///

///

///

///

### FIRST CAUSE OF ACTION

Violations of the Real Estate Procedures Act (RESPA)
(Against Citi)

83.     The subject mortgage loan is a federally related mortgage loan and is subject to the federal Real Estate Procedures Act (RESPA) and its implementing regulation, Regulation X.

84.     RESPA imposes a duty upon Defendant to comply.

85.     Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs.  Plaintiff alleges that Defendant regularly and routinely violates RESPA 12 U.S.C. § 2601 *et seq.* in the following ways:

    a.  All Defendants were required to comply with Section 6 of RESPA appearing at 12 U.S.C. §2605.  Section 6 violations are further defined by Regulation X and 24 C.F.R. § 3500.21 (e) as "Duty of loan servicer to respond to borrower inquiries."

    b.  Failure to disclose whether servicing of the loan may be assigned sold or transferred to any other person at any time while the loan is outstanding 12 U.S.C. §2605(a).

    c.  Failure to notify the borrower in writing of the assignment no less than 15 days before the effective date of the transfer. 12 U.S.C. §2605(b)(1)(2)(a).

    d.  Failure of transferee of servicing to provide notice no more than 15 days after the transfer. 12 U.S.C. §2605(c).

86.     As a direct and proximate result of Defendant's violations of RESPA and Regulation X, Plaintiff suffered damages in an amount to be proven at trial.  Plaintiff is entitled to actual damages, statutory damages, costs, attorney's fees and any other relief this Court deems proper.

    WHEREFORE, Plaintiff prays for relief as set forth below.

///

**SECOND CAUSE OF ACTION**

Intentional Infliction of Emotional Distress

(Against Citi)

87.     Paragraphs 1 through 86 and the paragraphs following this cause of action are incorporated by reference as though fully set forth herein.

88.     Plaintiff alleges that Defendants, by and through their intentional conduct, has caused Plaintiff severe emotional distress by selling her property out from under her, with knowledge that Defendant did not failed to keep its promise to consider Plaintiff for modification.  Defendant further caused Plaintiff's continued default by failing to properly communicate with him regarding the status of his loan and his loan modification.

89.     The elements of a claim for intentional infliction of emotional distress in California are (1) The defendant engages in extreme and outrageous conduct with the intent to cause, or with reckless disregard for the probability of causing, emotional distress; (2) the plaintiff suffers extreme or severe emotional distress; and (3) the defendant's extreme and outrageous conduct was the actual and proximate cause of the plaintiff's severe emotional distress.

90.     Citi required Plaintiff to be in default before it would consider Plaintiff for modification.   After Plaintiff defaulted on the mortgage payments, he applied for modification.  In reliance on Citi's promise to validly consider him for modification both under HAMP and under in-house modification plans, Plaintiff continued to fall further and further behind on monthly payments, accrued significant fees and charges, and failed to pursue other legal means available to him.

91.     Despite Plaintiff's reliance on every demand Citi has made in relation to consideration for modification, Citi failed to validly consider Plaintiff for modification. Plaintiff has suffered by the loss of the opportunity for modification and the ultimate loss of his property which was his family business.

92.     Plaintiff has been forced to retain additional legal representation to protect his interests in this matter.

93.     He has suffered severe emotional anxiety over the loss of his property and the public embarrassment caused by the publication of foreclosure notices.  This emotional stress has manifested physically.  Plaintiff has gotten very ill due to the severe stress he has suffered and continues to suffer.

94.     Plaintiff would not be suffering this emotional distress but for the actions of Defendants.

95.     Plaintiff seeks damages, in amounts to be proven at trial, for the emotional distress he has suffered as a proximate cause of Defendant's activities.


### THIRD CAUSE OF ACTION

Negligence (servicing)

(Against Citi)

96.     Paragraphs 1 through 95 and the paragraphs following this cause of action are incorporated by reference as though fully set forth herein.

97.     The elements of negligence are duty, breach, causation, and damages.  The first and most important element of negligence is duty.   According to 46 California Jurisprudence 3d Negligence § 9, "The concept of duty is only an expression of the sum total of those considerations of policy that lead the law to say that the particular plaintiff is entitled to protection." John A. Gebauer, J.D. et al, 46 Cal. Jur. 3d Negligence § 9 (2011). § 8 says a duty of care has three origins.  The origin relevant to this action is "the duty of a person to use ordinary care in activities from which harm might reasonably be anticipated . . . .  A person is not liable unless he or she is actively careless." *Id.* at §8 "Moreover, one's general duty of care includes the duty not to place another person in a situation in which the other person is exposed to an unreasonable risk of harm through the reasonably

foreseeable conduct, including the reasonably foreseeable negligent conduct of a third person." *Id.*

98.     Although, "as a general rule, a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money," *Nymark v. Heart Fed. Savings & Loan Assn.,* 231 Cal. App. 3d 1089 (1991), several courts have agreed that this is a "general rule" and there are occasions when a lender owes a duty of care to borrowers. *Champlaie v. BAC Home Loans Servicing, LP,* 706 F. Supp. 2d 1029, 1059-60 (2009); *Taheny v. Wells Fargo Bank, N.A.,* No. CIV. S-10-2123 LICK/EFB, 2010 WL 5394315; *Miller v. OCWEN Mortgage, LLC,* NO. 2:11-CV-00257-MCR-DAD, 2011 WL 1549290.

99.     When faced with the question of whether or not a loan servicer has a duty to a borrower when it undertakes to process a loan application, the Court in *Garcia* stated: "Moreover, '[t]he California legislature has determined that a person who undertakes an activity owes a duty to others to exercise ordinary care or skill.'  *See, Mid-Cal Nat. Bank v. Federal Reserve Bank of San Francisco,* 590 F.2d 761, (9th Cir. 1979), citing CAL. CIV. CODE § 1714.  Here, by asking Plaintiff to submit supporting documentation, Defendant undertook the activity of processing Plaintiff's loan modification request. Having undertaken that task, it owed Plaintiff a duty to exercise ordinary care in carrying out the task."

*Garcia v. Ocwen Loan Servicing, LLC,* 2010 WL 1881098.

100.    The *Garcia* Court went on to list the six factor test as set forth in *Nymark v. Heart Federal Savings & Loan Association,* 231 Cal. App. 3d 1089 (1991):

        ". . . in California the test for determining whether a duty of care is owed involves: 'the balancing of various factors, among which are [1] the extent to which the transaction was intended to affect the plaintiff, [2] the foreseeability of harm to him, [3] the degree of certainty that the plaintiff suffered injury, [4] the closeness of the connection between the defendant's conduct and the injury suffered, [5] the

moral blame attached to the defendant's conduct, and [6] the policy of preventing future harm." *See Nymark,* 231 Cal. App. 3d at 1098.

*Garcia,* 2010 WL 1881098 at 3.

101.    The *Champlaie* Court also noted that *Nymark* held that this test also determines 'whether a financial institution owes a duty of care to a borrower-client," *Champlaie* at 1061; *Nymark* at 1098.

102.    In *Roe*, the Ninth Circuit noted that the California Supreme Court 'arguably limited' *Biakanja* in *Bily v. Arthur Young & Co.,* 834 P.2d 745 (1992), which held a court must consider three additional factors before imposing a duty of care.  *Roe* at 1198.  *Roe* summarized these factors as "(1) liability may in particular cases be out of proportion to fault; (2) parties should be encouraged to rely on their own ability to protect themselves through their own prudence, diligence and contracting power; and (3) the potential adverse impact on the class of Defendant upon whom the duty is imposed." *Id.* (Defendantng *Bily,* at 68-73).  *Bily* was decided before *Nymark*, but not discussed therein.

103.    Applying these factors to the facts of Plaintiff' case, it is clear that Defendant had a duty to act reasonably when undertaking to modify Plaintiff'S loan.  This undertaking started when Defendant publicly announced through its website and other media that it would consider borrowers for modification.

104.    Furthermore, Defendant undertook loan modification by signing the HAMP contract to become a participating servicer.

105.    The transactions were unquestionably intended to affect Plaintiff.  The decision on Plaintiff's loan modification would determine what he would pay in order to retain his property.

106.    The improper processing of Plaintiff's application led to Plaintiff's loss of credit, severe emotional distress, public embarrassment with the publication of foreclosure notices, lost wages from time spent away from work preparing the documentation requests, and, in the end, the loss of his property.  This illustrates the potential harm to

Plaintiff from mishandling the application and this harm was reasonably foreseeable. "Although there was no guarantee the modification would be granted had the loan been properly processed, the mishandling of the documents deprived Plaintiff of the possibility of obtaining the requested relief." *Garcia* at 3.

107.    Furthermore, Plaintiff was foreseeably damaged first by requiring him to default on the loan to be considered for loan modification and then by not properly processing the loan to give him the opportunity of modification.  This foreseeably led to Plaintiff's loss of credit, public embarrassment with the publication of foreclosure notices, and the eventual sale of some properties at foreclosure.

108.    The injury to Plaintiff is certain, in that he lost the opportunity of obtaining a loan modification, suffered severe emotional distress, and the loss of credit.

109.    There is a close connection between Defendant's conduct and any injury actually suffered, because, to the extent Plaintiff otherwise qualified and would have been granted a modification, Defendant's conduct in misdirecting the submission of the applications or not properly processing the applications deprived Plaintiff of the opportunity of modification.

110.    "The existence of a public policy of preventing future harm to home loan borrowers is shown by recent actions taken by both the state and federal government to help homeowners caught in the home foreclosure crisis. *See, e.g.,* CAL. CIV. CODE § 2923.6 (encouraging lenders to offer loan modifications to borrowers in appropriate circumstances); *see also,* Press Release at http://gov.ca.gov/press-release/14871 ("Gov. Schwarzenegger Signs Legislation to Provide Greater Assistance to California Homeowners"), and MakingHomeAffordable.gov (describing the federal "Making Home Affordable Program")." *Garcia* at 3.

111.    It is not clear whether or not moral blame would attach to the conduct of Defendant, but five of the six balancing factors listed in *Nymark* clearly weigh in favor of finding a duty of care.

112.     As for the remaining three factors, Plaintiff hands are clean and it was by no fault of his own that his loan application was not properly processed.  In fact Plaintiff diligently investigated the status of his application and continued to attempt to communicate and cooperate with Defendant.  Therefore, liability is not out of proportion to fault.

113.     Plaintiff acted prudently.  He called and waited on hold multiple times to negotiate amicably with Defendant.  He followed the instructions given to him in submitting his modification application.  He diligently followed up with the lender about the status of his application and took reasonable steps to correct the issue by resubmitting the paperwork repeatedly.

114.     Under the Financial Stability Act of 2009, the Home Affordable Modification Program (HAMP) was instituted.  This program requires participating servicers seek out and contact potential HAMP candidates and to provide modification to certain distressed homeowners under HAMP guidelines.  Participating servicers enter into HAMP contracts which have certain requirements regarding the staffing and training of employees to handle borrower modifications.

115.     Defendant is a participating HAMP servicer.

116.     The issue in front of the Court in *Sierra-Bay* was whether or not a breach of federal law constituted negligence per se under California Evidence Code (Evid. Code) § 669.  *Sierra-Bay Fed. Land Bank Asson. v. Superior Court,* 227 Cal. App. 3d 318 (1991).  The court determined that violation of a federal statute alone is not negligence per se under California law.  But, if a Plaintiff argues a breach of a legal duty that caused Plaintiff' injuries, federal statutes and acts enacted to protect the group of persons of which Plaintiff is a member can be used to set the standard of care.

117.     Under the reasoning of *Sierra-Bay,* these standards set forth to protect distressed borrowers such as Plaintiff could be used to set the standard of care for participating loan servicers, such as Defendant.  Under the HAMP contract, servicers are required to provide sufficient staffing and to adequately train the modification employees.  HAMP has many

other guidelines regarding the handling of distressed homeowners and processing of modification applications.

118.   Defendant, as a participator in HAMP, should at a minimum be required to follow the guidelines of HAMP in order to fulfill its duty of due care and would not be prejudiced by such.

119.   Therefore, Defendant had a duty of due care in instructing Plaintiff on submission of the modification applications and in processing Plaintiff's applications.  Defendant breached this duty by refusing to communicate or incorrectly instructing Plaintiff and by not processing Plaintiff's applications.

120.   Plaintiff was damaged by these negligent acts because his credit was destroyed, he was publicy embarrassed with the publication of foreclosure notices, he lost the opportunity for consideration of modification, and suffered other damages as set forth in this complaint.

121.   Plaintiff prays for damages in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants and each of them as follows:

1.   That judgment is entered in Plaintiff's favor and against Defendants, and each of them;

2.   For general, special, and consequential damages in amounts to be proven at trial;

3.   For damages, disgorgement, and injunctive relief;

4.   For compensatory and statutory damages, attorneys' fees, and costs according to proof at trial;

5.   For exemplary damages in an amount sufficient to punish Defendant's wrongful conduct and deter future misconduct

6.   On all causes of action, for costs of suit herein;

7.   On all causes of action, for pre- and post-judgment interest;

8.   On all causes of action for which attorneys' fees may be awarded pursuant to the governing contract, by statute or otherwise, reasonable attorneys fees; and

9.   On all causes of action, for such other and further relief as this Court may deem just and proper so that Plaintiff shall recover restitutionary or compensatory damages.

**PLAINTIFF HEREIN DEMANDS A JURY TRIAL.**

Dated: December 4, 2012                              Respectfully submitted by,
                                                     UFAN Legal Group, PC


                                                     /s/Kristin Crone_____
                                                     Kristin Crone, Esq.
                                                     Attorneys for Plaintiff
                                                     Kristin@theufan.com