IRV M. GROSS (SBN 53659)
LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.
10250 Constellation Boulevard, Suite 1700
Los Angeles, California 90067
Telephone: (310) 229-1234
Facsimile: (310) 229-1244
E-mails: img@lnbyb.com

Attorneys for Defendants Crystal Moore
And Bryan Bly

**UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| OBED M. APOSTOL, JR.,<br><br>　　　　　　　　　　　　Plaintiff,<br>v.<br><br>CITIMORTGAGE, INC., a New York Corporation; CITI RESIDENTIAL LENDING, INC., a national banking association; CR TITLE SERV ICES, INC., a Delaware Corporation; CRYSTAL MOORE, an individual; BRYAN BLY, an individual; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, a Delaware Corporation; and DOES 1 through 100, inclusive,<br><br>　　　　　　　　　　　　Defendants. | Case No. 13-CV-01983-WHO<br><br>**DEFENDANTS CRYSTAL MOORE'S AND BRYAN BLY'S MEMORANDUM OF POINTS AND AUTHORITIES IN REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED VERIFIED COMPLAINT PURSUANT TO FED.R.CIV.P. 12(b)(6)**<br><br>Date: November 20, 2013<br>Time: 2:00 p.m.<br>Place: Courtroom 2<br>　　　United States Courthouse<br>　　　450 Golden Gate Avenue<br>　　　San Francisco, California 94102<br><br>Judge: Hon. William H. Orrick |

**TO THE HONORABLE WILLIAM H. ORRICK, UNITED STATES DISTRICT JUDGE, AND TO PLAINTIFF AND HIS ATTORNEY OF RECORD:**

Defendants Crystal Moore ("Moore") and Bryan Bly ("Bly" and together with Moore, "Defendants"), for themselves alone, respectfully submit the following memorandum of points and authorities in reply to the brief filed in opposition to their motion to dismiss the First Amended Verified Complaint (the "Opposition") filed by Plaintiff Obed M. Apostol, Jr. ("Apostol"). For the reasons set forth below in addition to those set forth in the initial motion to dismiss (the "Motion"), Defendants respectfully request the Court to dismiss the First Amended Verified Complaint ("FAC") and each claim for relief alleged therein, and to do so without leave to amend.

Dated: October 29, 2013            LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.

By: */s/ Irv M. Gross*
    Irv M. Gross
    Attorneys for Defendants Crystal Moore
    and Bryan Bly

# **MEMORANDUM OF POINTS AND AUTHORITIES**[1]

## **I.**

## **ARGUMENT**

### A.   **Apostol Applies An Incorrect Legal Standard**

Although reference is made to *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), every case cited in the Opposition for the applicable legal standard is a pre-*Twombly* case.[2] In each of those case the court relied upon the standard articulated in *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 21 L.Ed.2d 80 (1957), that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim.  The "no set of facts" standard, however, was unequivocally rejected, laid to rest and replaced by the "facial plausibility" test in *Twombly* at 552, 570.

The Opposition makes no effort to demonstrate that the allegations of the FAC as to Moore and Bly set forth a facially plausible claim; indeed, the term is not even mentioned in the Opposition.  Instead, Apostol's argument for denying the Motion consists of little more than a jumble of unsupported and conclusory suppositions to the effect that there is no evidence that the signatures that appear on the Assignment of Corporate Deed of Trust (the "Assignment") - the execution and notarization of which are ***the only acts attributable to Moore and Bly*** in the entire FAC - are actually those of Moore and Bly, and that "[d]iscovery is necessary to determine that these parties are the ACTUAL parties who signed Exhibit B [the Assignment]."[3] This is an astonishing statement on several levels.  First and foremost, it is belied by Apostol's own allegations in the FAC:

> 12.   In furtherance of the fraud, the above-cited Assignment of the DOT (1st mortgage assignment") ***was signed and***

---

[1] Unless otherwise stated, all defined terms below have the same meaning as in the preceding notice.
[2] Opposition at 3-6.
[3] Opposition at 4.

1

*notarized by . . .* CRYSTAL MOORE and BRYAN BLY, respectively.[4]

The only wrongdoing by Moore and Bly alleged in the FAC, however, is that ***they did in fact sign and notarize*** the Assignment, but without the authority to do so.[5] Nor is there a single allegation in the entire FAC (or the Opposition) even remotely suggesting that Apsotol is qualified - beyond unadulterated and improper conjecture - to question whether the Moore and Bly signatures are forged. The notion that the signatures on the Assignment were or even might have been forged is a quintessential example of the kind of conclusory statements, unwarranted deductions and unreasonable inferences that courts uniformly hold are not entitled to be accepted as true in deciding a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rule 12(b)(6)").[6] *See, e.g. Hartman v. Gilead Sciences, Inc*., 536 F.3d 1049, 1055 (9th Cir. 2008).

Lastly, the argument that the motion to dismiss should be denied because discovery is necessary to determine if the Moore and Bly signatures are forgeries[7] is inconsistent with long settled law that a Rule 12(b)(6) motion should not be allowed as a mechanism to "open the door

---

[4] FAC,¶12. (Emphasis added). Note that Apostol verified under oath both the original complaint and the FAC. The verification states in pertinent part "that the matters stated therein are true of my own knowledge". (The allegations are not even made on information and belief, which would at least have provided Apostol some "out".). Under state law, Apostol would be bound by the allegations of his verified pleading, *Schmidlin v. City of Palo Alto*, 157 Cal.App.4th 728, 791 (2007), Under federal law, a complaint need not be verified; however, Rule 11(b)(3) of the Federal Rules of Civil Procedure ("Rule 11") provides in pertinent part that the signing of the pleading constitutes a certification that the factual contentions have evidentiary support. Defendants respectfully submit that Apostol and his counsel violated Rule 11 by filing the FAC (as well as the original complaint).
[5] Id.
[6] Similarly, in ¶10 of the Opposition (p.3), Apostol for the first time argues that the Assignment is invalid because the notarization of the Assignment did not comply with California law. (Note that the FAC does not contain a negligence cause of action, and in any event there is no reason why Bly would have had a duty of care to Apostol in connection with the notarization of the Assignment). However, Apostol does not allege in the FAC that he is qualified to opine on California law regarding the requirements for a valid notarization, or what those requirements are, or whether a Florida notary notarizing a document in Florida is required to follow anything but Florida law, nor has his counsel offered any law in this regard in the Opposition.
[7] Opposition at 4.

2

*notarized by . . .* CRYSTAL MOORE and BRYAN BLY, respectively.[4]

The only wrongdoing by Moore and Bly alleged in the FAC, however, is that ***they did in fact sign and notarize*** the Assignment, but without the authority to do so.[5] Nor is there a single allegation in the entire FAC (or the Opposition) even remotely suggesting that Apsotol is qualified - beyond unadulterated and improper conjecture - to question whether the Moore and Bly signatures are forged. The notion that the signatures on the Assignment were or even might have been forged is a quintessential example of the kind of conclusory statements, unwarranted deductions and unreasonable inferences that courts uniformly hold are not entitled to be accepted as true in deciding a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rule 12(b)(6)").[6] *See, e.g. Hartman v. Gilead Sciences, Inc*., 536 F.3d 1049, 1055 (9th Cir. 2008).

Lastly, the argument that the motion to dismiss should be denied because discovery is necessary to determine if the Moore and Bly signatures are forgeries[7] is inconsistent with long settled law that a Rule 12(b)(6) motion should not be allowed as a mechanism to "open the door

---

[4] FAC,¶12. (Emphasis added). Note that Apostol verified under oath both the original complaint and the FAC. The verification states in pertinent part "that the matters stated therein are true of my own knowledge". (The allegations are not even made on information and belief, which would at least have provided Apostol some "out".). Under state law, Apostol would be bound by the allegations of his verified pleading, *Schmidlin v. City of Palo Alto*, 157 Cal.App.4th 728, 791 (2007), Under federal law, a complaint need not be verified; however, Rule 11(b)(3) of the Federal Rules of Civil Procedure ("Rule 11") provides in pertinent part that the signing of the pleading constitutes a certification that the factual contentions have evidentiary support. Defendants respectfully submit that Apostol and his counsel violated Rule 11 by filing the FAC (as well as the original complaint).

[5] Id.

[6] Similarly, in ¶10 of the Opposition (p.3), Apostol for the first time argues that the Assignment is invalid because the notarization of the Assignment did not comply with California law. (Note that the FAC does not contain a negligence cause of action, and in any event there is no reason why Bly would have had a duty of care to Apostol in connection with the notarization of the Assignment). However, Apostol does not allege in the FAC that he is qualified to opine on California law regarding the requirements for a valid notarization, or what those requirements are, or whether a Florida notary notarizing a document in Florida is required to follow anything but Florida law, nor has his counsel offered any law in this regard in the Opposition.

[7] Opposition at 4.

2

to discovery" before the plaintiff has even alleged a cognizable claim. *See, Ashcroft v. Iqbal*, 556 U.S. 662, 678-79, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) ("Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."); *Schatz v. Republican State Leadership Committee*, 669 F.3d 50, 56 (1st Cir. 2012) ("to access discovery mechanisms, a plaintiff must *first* produce a complaint that passes the plausibility test"). As the Ninth Circuit has observed, the purpose of Rule12 (b)(6) is to enable defendants to challenge the legal sufficiency of a complaint without subjecting themselves to protracted and costly discovery. *Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 739 (9th Cir. 1987.

By even the most generous application of the facial plausibility standard, the FAC fails to allege facts sufficient to state any claims for relief against Moore and Bly. Accordingly, the FAC should be dismissed as to Moore and Bly.

**B.     Apostol Does Not Even Address, Let Alone Establish, That A True Case Or Controversy Exists, And That He Has Standing to Prosecute This Action**

Before prosecuting an action in federal court, a plaintiff must establish that an actual case or controversy exists with the defendant, and that plaintiff is a person entitled to have the court decide the merits of the dispute or of a particular issue. U.S. Const., art. III, §2, cl.1. The controversy must be definite and concrete, such that it implicates the *adverse legal interests* of the parties and admits of specific and available relief. *Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*, 300 U.S. 227, 241, 57 S.Ct. 461 (1937). As Defendants explained in their initial brief, neither they nor their employer, Nationwide Title Clearing, Inc. ("Nationwide"), have ever asserted any interest, legal or equitable, in or to the real property that is the subject of this litigation, or any claim of whatever kind that could be construed as adverse to Apostol's legal interests. There is not, nor has there ever been, an actual controversy between the Defendants or either of them and Apostol. Not surprisingly, Apostol does not address this defense anywhere in the Opposition.

The Opposition is equally silent regarding whether Apostol has standing to prosecute this litigation against Moore and/or Bly. Considering that the law and argument that Apostol does not have standing to pursue this action against Moore and Bly is the bedrock of the

Motion, it speaks volumes that the issue of Apsotol's standing is never even mentioned in the Opposition.  Apostol cannot - and by his silence does not now - dispute that (i) the basis of his claims against both Moore and Bly is the alleged invalidity of the Assignment (ii) the Assignment is a contract (ii) he is not a party to the Assignment (iii) as a matter of law one who is not a party to a contract, including an assignment, does not have standing to sue based on its alleged validity or invalidity.  *See, Bleavins v. Demarest*, 196 Cal. App.4th 1533, 1542 (2011). Whether the purported invalidity of the Assignment is based on Moore's and Bly's lack of authority to execute and notarize the Assignment because they were employees of Nationwide, which is the ***only*** wrongful conduct alleged against them in the FAC, or it is based on the alleged forgeries and notarial errors raised for the first time in the Opposition, the unassailable conclusion remains that Apostol does not have standing to prosecute this action against Moore and Bly.

**C.** **Apostol's Failure to Respond to any of the Substantive Arguments in the Motion Is Strong Support for Granting It**

The FAC alleges claims for relief for wrongful foreclosure, constructive fraud, quiet title, violation of conditions precedent of the deed of trust, violation of California Civil Code §2934(a)(1)(A), violation of the federal Truth-In-Lending Law and violation of Business and Professions Code §17200 ("§17200").  The Motion presents arguments and supporting decisional authorities for dismissing each of these claims for relief and the entire FAC as to Moore and Bly; defendants, therefore, will not belabor the Court with another recitation of these facts, law and argument. The Opposition, on the other hand, is silent with respect to virtually all of the substantive arguments and relevant law in the Motion.  At most, it might be said that in the Opposition Apostol argues that he has plead fraud with sufficient specificity, that "the terms of the loan imposed upon Defendants a duty of good faith and fair dealing" that they purportedly breached, and that he makes a very puzzling argument based on "successor in interest liability".[8]  Apostol's arguments in this regard, however, are unpersuasive and contrary to applicable law.

---

[8] Opposition Brief at 8-9.

4

In addition to the baseline pleading requirements of Rule 8(a) of the Federal Rules of Civil Procedure (which Apostol has not satisfied according to the *Twombly* test), Rule 9(b) requires fraud claims (and claims based on fraud, such as those for violation of §17200) to be pleaded with greater specificity than other claims.  The importance of Rule 9(b) is such that courts recognize it as the functional equivalent of Rule 12(b)(6) and , therefore, dismissal is proper where the complaint falls short of the requisite specificity. *Transfresh Corp. v. Ganzerla & Assoc., Inc*., 862 F.Supp.2d 1009, 1017 (N.D.Cal. 2012), citing *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1107 (9th Cir. 2003).  Here, the FAC, and now also the Opposition, is completely silent with respect to *facts* - as opposed to self-serving conclusions - that Apostol actually and justifiably relied on Moore's and Bly's execution and notarization of the Assignment, and that he suffered actual damages as a result of such reliance.  *See, e.g. Engalia v. Permanente Medical Group, Inc*., 15 Cal.4th 951, 976-77 (1997).  The FAC, therefore, can and should be dismissed for failure to satisfy the specificity requirement of Rule 9(b) as well as the broader failure to allege facts sufficient to state at least a plausible claim under Rule 12(b)(6).

Although the FAC does not contain a claim for relief for breach of the covenant of good faith and fair dealing, that alleged breach is raised, now for the first time, in the Opposition:

> The terms of the loan imposed upon Defendants a duty of good faith and fair dealing in this matter.  Defendants breached that duty.  These Defendants knew or reasonably should have known they did not have the capacity to execute loan documents that would cause Plaintiff to loose [sic] their home through mortgage fraud.[9]

Apostol again uses a "broad brush" - referring simply to "Defendants" - to improperly lump Moore and Bly in with all of the other defendants when, in fact, they did not execute any loan documents and had absolutely no communication or other contact with Apostol regarding the terms of the loan or anything else. Furthermore, the covenant of good faith and fair dealing is a supplement to the express terms of an existing contract between the parties. The covenant, therefore, cannot be implied or breached where there is no underlying contractual relationship.

---

[9] Id.

1 *Waller v. Truck Ins. Exchange, Inc.,* 11 Cal.4th 1, 36 (1995). The FAC does not allege the existence of any contractual relationship between Moore and/or Bly (or their employer, Nationwide) with Apostol, nor has there ever been one.

The only other "substantive" argument made in the Opposition appears to be that Moore and Bly somehow have liability predicated on a successor in interest theory.[10] Apostol correctly states that "successor in interest" is defined as '[o]ne who follows another in ***ownership or control*** of property", *quoting Perez v. 222 Sutter St. Partners*, 222 Cal.App.3d 938, 948 (1990). (Emphasis added). *See also, Olympic Federal Savings & Loan Association v. Regan*, 648 F.2d 1218, 1222-23 (9th Cir. 1981) (successor in interest is one who ***acquires*** an interest in the property). But Moore and Bly never acquired an interest in the subject property, no such interest ever inured to them, nor is any such acquisition even alleged in the FAC.[11]

### D. The Court Should Consider the Citi Authorization

As explained in the Motion,[12] the ***only*** allegation of wrongdoing alleged against Moore and Bly in the entire FAC is that they executed and notarized the Assignment on behalf of defendant CITI Residential Lending, Inc. ("Citi") as attorney-in-fact for Argent Mortgage Company, LLC without authority to do so, as evidenced by the fact that at the time the Assignment was executed both Moore and Bly were (and still are) employees of Nationwide.[13] In response to this particular argument upon which rests Apostol's entire case against Moore and Bly, Defendants have provided the Court with a copy of the written authorization from Citi to Nationwide (the "Citi Authorization"). The Citi Authorization identifies specific Nationwide employees, including Moore and Bly, as persons authorized to execute assignments and releases on behalf of Citi, and to do so in the capacity and with the authority of a Citi Vice President and Assistant Secretary of the corporation. Moore and Bly respectfully submit that ***the Citi***

---

[10] Id.

[11] The one case cited by Apostol, *Velazquez v. GMAC Mortgage Corporation*, 605 F.Supp.2d 1049, 1053 (C.D.Cal. 2008,), is inapposite. In *Velazquez,* defendant GMAC Mortgage Corporation ***purchased*** the plaintiffs' loan from the original lender that had gone into bankruptcy.

[12] Motion at 11-12.

[13] FAC, ¶12.

6

*Authorization is dispositive* on the issue of whether they were authorized to execute and notarize the Assignment on behalf of Citi, and for that reason alone the FAC should be dismissed as to them.

Apostol complains that the Citi Authorization is not a document which the Court can judicially notice under Federal Evidence Code §201.[14] While Apostol would generally be correct, Defendants respectfully submit that this is a circumstance where the Court can and should consider the Citi Authorization because the issue implicates even more fundamental and important rules of pleading and practice than whether a court can take judicial notice of a particular document.

The central purpose of Rule 11 is to deter baseless pleadings. *Newton v. Thompson*, 22 F.3d 1455, 1463 (9th Cir. 1994). The importance of Rule 11 is such that the court may resort to it on its own initiative, Rule 11 (c)(3), and at least one court in this circuit has held that in appropriate circumstances Rule 11 may be used to test the sufficiency of the pleadings:

> There is some support for plaintiff's position that 'Rule 11 should not be used to raise issues of legal sufficiency that more properly can be disposed of by a motion to dismiss or a motion for more definite statement or a motion for summary judgment.' [Citations omitted.]. However, the court is mindful of the mandate of Rule 1 of the Federal Rules of Civil Procedure that the Rules 'shall be construed and administered to secure the just, speedy, and inexpensive determination of every action.' The court finds that the fundamental purposes of Rule 1 and Rule 11 of the Rules of Federal Procedure will be promoted by a review of the legal sufficiency of plaintiff's complaint in this [Rule 11] motion."

*Smith & Green Corporation v. Trustees of the Construction Industry, etc.*, 244 F.Supp.2d 1098, 1104 (D.Nev. 2003). Although the Court presently has before it a motion to dismiss under Rule 12(b)(6) and not a Rule 11 motion, Defendants respectfully submit that it serves the purposes of the Federal Rules, in particular Rules 1 and 11, to consider the Citi Authorization because it demonstrates beyond peradventure that Apsotol's central (indeed, only) factual contention supporting his claims against Moore and Bly has no evidentiary support. Rule 11(b)(3). A number of state courts in California, as well as the United State

---

[14] Opposition at 7.

7

Bankruptcy Court for the Northern District of California recently, have allowed Nationwide (and its employees, such as Moore and Bly) to provide the authorization applicable in their particular case *at the demurrer or motion to dismiss stage* because the evidence is so compelling, and this Court is respectfully requested to do so as well.[15]

### E. The Motion Should Be Granted Without Leave to Amend

Apostol commenced this action by filing a complaint against these Defendants and others on April 30, 2013. (DKT#1)  On July 29, 2013, Defendants filed a motion to dismiss the original complaint (DKT#19), and concurrently a Request for Judicial Notice. (DKT#20)

On August 2, 2013, Apostol and all of the Defendants in the action, including Moore and Bly, entered into a stipulation to, among other things, continue the hearing date on the motion to dismiss. (DKT#24)  The stipulation was approved by order entered on August 2, 2013. (DKT#25)

On August 26, 2013, Apostol filed the FAC. (DKT#26) It is instructive that although Apostol had the benefit of reading all of the facts, law and arguments raised by Moore and Bly as the grounds for dismissing the original complaint, the FAC does not address any of those arguments; rather, it is identical to the original complaint as it pertains to these Defendants.  On September 27, 2013, Moore and Bly filed the Motion (DKT#29) and a supporting Request for Judicial Notice, also the same as the original. (DKT#30)

The FAC has the very same deficiencies as the original complaint, deficiencies that, if they were curable, could have been rectified in the FAC.  Likewise, the current Motion is brought on the same grounds as the original motion to dismiss, and asserts grounds for dismissal that Apostol could have tried to blunt in the FAC if it was possible to do so.  In light of Apostol's inability or unwillingness to address these issues either in the FAC or the Opposition, there is no reason to believe that if the current Motion is granted,  Apostol will be able to file an amended complaint with different allegations that would be sufficient to withstand another Rule 12(b)(6) motion.  And this is particularly true since the grounds for dismissing the FAC (as with the original complaint) include *inter alia* grounds that exist as a matter of law.

---

[15] See, the Request for Judicial Notice filed in support of the Motion.

8

The only argument in the Opposition for leave to amend is that leave should be provided to "allow discovery to commence to discovery [sic] and verify certain information on judicially noticed documents presented by these Defendants."[16] However, this is precisely the type of blatant discovery "fishing expedition" that courts, including the Supreme Court in *Iqbal*, have expressly rejected as a ground for denying a motion to dismiss, *supra*.

## II.
## CONCLUSION

For all of the reasons set forth above and in the initial memorandum filed in support of the Motion, Moore and Bly respectfully request the Court to grant the Motion.  Further, they request the Motion be granted without leave to amend because the FAC's infirmities are fatal, and amendment, therefore, would be futile.

Dated: October 29, 2013          LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.

By:   */s/ Irv M. Gross*
          Irv M. Gross
          Attorneys for Defendants Crystal Moore
          and Bryan Bly

---

[16] Opposition at 10.

9

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
10250 Constellation Blvd., Suite 1700, Los Angeles, CA 90067

A true and correct copy of the foregoing document entitled**: DEFENDANTS CRYSTAL MOORE'S AND BRYAN BLY'S MEMORANDUM OF POINTS AND AUTHORITIES IN REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED VERIFIED COMPLAINT PURSUANT TO FED.R.CIV.P. 12(b)(6)** will be served or was served (a) on the judge in chambers in the form and manner required by LBR 5005-2(d); and (b) in the manner stated below:

**1**.  **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **October 29, 2013,** I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:  On **October 29, 2013,** I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

*None.*

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **October 29, 2013,** I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

*Via Overnight Delivery*
Judge William H. Orrick
Attn: Courtroom Deputy
San Francisco Courthouse, Courtroom 2
450 Golden Gate Avenue, San Francisco, CA 94102

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| October 29, 2013 | Stephanie Reichert | /s/ Stephanie Reichert |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):**

Mark Whitney Lapham
marklapham@sbcglobal.net,lesliepatrice@gmail.com

John Nadolenco
jnadolenco@mayerbrown.com,jaustgen@mayerbrown.com

Steven Edward Rich
srich@mayerbrown.com,courtnotification@mayerbrown.com,LOS-Docket@mayerbrown.com,rortiz@mayerbrown.com,egriffin@mayerbrown.com