UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OBED M. APOSTOL,<br><br>    Plaintiff,<br><br>    v.<br><br>CITIMORTGAGE, INC., et al.,<br><br>    Defendants. | Case No. 13-cv-01983-WHO<br><br>**ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS**<br><br>Re: Dkt. Nos. 29, 32 |

Currently before the Court are defendants' motions to dismiss. Having considered the papers submitted, and for good cause shown, the Court hereby GRANTS defendants' motions to dismiss.

## BACKGROUND

This action stems from the $460,000 mortgage loan obtained by plaintiff Obed Apostol, Jr. from Argent Lending on October 31, 2006. First Amended Complaint (Docket No. 26), Ex. A. Plaintiff secured the loan with a deed of trust on real property located at 1330 Cedar Court, Gilroy, California (Property). *Id*. The Deed of Trust (DOT) states that the loan (Note) or any partial interest in the loan ―can be sold one or more times without prior notice to the Borrower.‖ FAC, Ex. A ¶ 20. Under the DOT, Argent Mortgage was the original Beneficiary and Town and Country Title Services the original Trustee. FAC, Ex. A. Plaintiff alleges that on or around March 1, 2007, the ―mortgage loan‖ was sold by Argent in a securitization transaction, and ended up being held by the CMLTI 2007-AMC2 Trust. FAC, ¶¶ 2-5. Plaintiff alleges that the laws governing the Trust and/or the Pooling and Servicing Agreement (PSA) governing the Trust, require that the transfer of the loans into the Trust must be completed within three months of the Trust's creation – meaning that both the loan and the DOT had to be assigned from the original entity to the Trust within that time frame. *Id*. ¶¶ 5-6. However, plaintiff alleges, the official

records of the Recorder's Office in the County of Santa Clara do not show that the plaintiff's security interest – the DOT – was assigned from Argent to any other entity on or before the May 30, 2007 deadline required by the PSA. *Id*. ¶ 8. That created a ―material breach of the binding PSA, resulted to an irreversible break in the chain of title." *Id*. ¶ 9.

On February 11, 2009 (recorded March 2, 2009), defendant Citi Residential Lending, Inc. – acting as the attorney-in-fact for Argent Mortgage – executed a ―Corporate Assignment of Deed of Trust," assigning defendant Mortgage Electronic Registration Systems, Inc. (MERS) to be the ―nominee" for CitiMortgage, Inc. as Beneficiary under the DOT. FAC, Ex. B. That Corporate Assignment was signed by defendant Crystal Moore and notarized by defendant Bryan Bly. *Id*. On March 14, 2011 (recorded March 17, 2011), MERS assigned the DOT directly to defendant CitiMortgage, Inc. FAC, Ex. C. Also on March 14, 2011 (recorded March 17, 2011), CitiMortgage, Inc. substituted defendant CR Title Services, Inc. as Trustee in place of Town and Country Title. FAC, Ex. D.

Also on March 14, 2011 (recorded March 17, 2011), CR Title issued a Notice of Default (NOD) to plaintiff. FAC, Ex. E. On July 19, 2011 (recorded July 19, 2011) CT Title issued a Notice of Trustee's Sale (NOTS) to plaintiff. FAC, Ex. F. A second NOTS was issued to plaintiff on April 20, 2012 (recorded on April 24, 2012). FAC, Ex. G. Plaintiff's Property was sold at a trustee's sale and a Trustee's Deed Upon Sale was signed on May 22, 2012 (and recorded on May 23, 2012). FAC, Ex. H.

Plaintiff filed this lawsuit on April 30, 2013, and sues defendants CitiMortgage, Inc., Citi Residential Lending, Inc., CR Title Services, Inc. (collectively ―Citi defendants"), MERS, Crystal Moore, and Bryan Bly for claims arising out of the foreclosure and sale of the Property. FAC at 1-2. The gravamen of plaintiff's First Amended Complaint is that the actions taken by the defendants in connection with the sale and securitization of his mortgage loan in 2007, and the foreclosure and trustee's sale on the Property were invalid and/or illegal. As a result, plaintiff contends, the defendants have no right or interest in the Property and title in the Property should be given to plaintiff. *See generally* FAC. Plaintiff asserts seven causes of action: wrongful foreclosure; constructive fraud; quiet title; failure to comply with conditions precedent; violation

of California Civil Code § 2934(a)(1)(A); violation of the Truth in Lending Act, 15 U.S.C. § 1601 et seq.; and violation of California Unfair Competition Law (Cal. Bus. & Prof. Code § 17200, et seq.).

The Citi Defendants and MERS (Financial Entities) move to dismiss, arguing that plaintiff's claims are barred by res judicata because they were or could have been litigated in a case plaintiff lost in the Central District of California. The Financial Entities also argue that plaintiff lacks standing to challenge the assignments of his mortgage loan following the securitization process and any breach of the underlying Pooling and Servicing Agreement (PSA), and that the remainder of plaintiff's claims fail to state a claim. Defendants Crystal Moore and Bryan Bly also move to dismiss, arguing that plaintiff lacks standing to assert claims against Moore and Bly arising out of the assignment of his loan, that plaintiff's claim for constructive fraud should be dismissed because it is barred by the statute of limitations and lack of a fiduciary relationship, and that plaintiff's remaining claims should be dismissed as to Moore and Bly because there are no facts regarding Moore or Bly's conduct that could give rise to the claims. Plaintiff opposes the motions.

**LEGAL STANDARD**

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

In deciding whether the plaintiff has stated a claim upon which relief can be granted, the court must assume that the plaintiff's allegations are true and must draw all reasonable inferences in the plaintiff's favor. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987).

3

However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). If the Court dismisses the complaint, it must then decide whether to grant leave to amend. The Ninth Circuit has "repeatedly held that a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (citations and internal quotation marks omitted).

## DISCUSSION

### I. FINANCIAL ENTITIES' MOTION TO DISMISS

#### A. Res Judicata

The Citi Defendants and MERS move to dismiss the claims asserted against them as barred by res judicata in light of litigation plaintiff initiated in state court that was removed to the Central District of California. In his state court complaint (the "Initial Complaint"), Apostol (and twelve other individuals) asserted that defendants Citibank N.A. and CitiMortgage failed to allow him to modify his mortgage loan and used improperly notarized and fraudulent documents to transfer his and the other plaintiffs' loans. Initial Complaint, ¶¶ 18, 27, 37, 39.[1] Specifically, in the Initial Complaint Apostol asserted a claim for "Privity of Contract" (Initial Complaint at 20), arguing that defendants had no right to enforce the Note and foreclose under the DOT because of improper endorsements and assignments of the mortgage documents, and for violation of the Federal Truth in Lending Act. Apostol also asserted a claim for "Rescission/Mistake/Void Agreement" (*id*. at 26), arguing that he executed his loan documents based on a mistaken belief that he was to remain

---

[1] Plaintiff's Initial Complaint filed in state court is attached as Exhibit 5 to the Declaration of Steven E. Rich (Rich Decl.). The Court may take judicial notice of Apostol's filings and the court orders in his prior case for purposes of determining the res judicata effect of his prior action. *See, e.g., Holder v. Holder*, 305 F.3d 854, 866 (9th Cir. 2002) (taking judicial notice of the state court opinion for purposes of determining issue preclusion). The Financial Entities' Request for Judicial Notice (Docket No. 33) of the filings and orders in plaintiff's Central District case is GRANTED. The Financial Entities also request that the Court take judicial notice of documents that have been incorporated by reference into plaintiff's complaint, including the underlying PSA, the Deed of Trust and other records which have been recorded with the Santa Clara County Recorder's Office. *See* Docket No. 33. As these documents have all been incorporated by reference into plaintiff's FAC, *see e.g.,* FAC ¶ 73 & Exhibits A-H of FAC, the Court GRANTS the request for judicial notice of those documents as well.

4

in a borrower/lender relationship with the lender but defendants set up a PSA for the securitized loan and had no interest in the viability of his loan. He also asserted a claim for ―Negligence (origination)‖ (*id*. at 28), arguing defendants improperly securitized the loan, which was not in plaintiff's interest and harmed plaintiff. Finally, he asserted a claim for ―Negligence (servicing)‖ (*id*. at 37), arguing that defendants failed to act in good faith in the loan modification process.

The Initial Complaint was removed to the United States District Court for the Central District of California, and plaintiff filed a First Amended Complaint (FAC CDCA) on behalf of himself and the other plaintiffs. In the FAC CDCA, plaintiff renamed his first cause of action as ―Invalid Assignment,‖ and asserted that there were substantive and procedural defects in the assignment of ownership and the securitization of plaintiff's (and the other plaintiffs') loans. *See* FAC CDCA at 25 & ¶ 145, Exhibit 4 to Rich Decl. Defendants Citibank and CitiMortgage moved to dismiss. The judge in the Central District dismissed the FAC for improper joinder, leaving only plaintiff Apostol remaining in that action. March 28, 2013 Order (Exhibit 1 to Rich Decl.) at 1. Apostol filed a Second Amended Complaint (SAC CDCA), on behalf of himself and against Citibank, N.A., CitiMortgage, Inc., and Citi Financial Mortgage, Co. Exhibit 3 to Rich Decl. In his SAC, plaintiff asserted causes of action for violation of the Real Estate Settlement Procedures Act (RESPA, 12 U.S.C. § 2601 *et seq*.), Intentional Infliction of Emotional distress, and Negligence (servicing). The District Court dismissed Apostol's SAC with prejudice, for failure to allege facts sufficient to state a claim. Ex. 1, Rich Decl. The District Court noted that over the course of that action plaintiff had asserted eight causes of action – including the privity of contract and invalid assignment claims which were based on the alleged improprieties in the transfer and securitization of his loan – and that plaintiff had ―several attempts‖ over his three complaints to state a cause of action against defendants. *Id*. As such, the Court denied further leave to amend and dismissed the action with prejudice. Ex. 1 to Rich Decl., at 9.

The Financial Entities argue that the claims Apostol alleges in *this* case, asserted against at least one identical defendant (CitiMortgage, Inc.), are barred by res judicata. As noted above, the claims at issue here are all based on allegations that due to the breach of the PSA, the subsequent mortgage assignments and foreclosure documents were invalid and fraudulent and, therefore, none

5

1  of the defendants had the power to enforce the underlying mortgage Note and foreclose on
2  plaintiff's home. FAC, ¶ 1.
3  "Res judicata, or claim preclusion, prohibits lawsuits on 'any claims that were raised or
4  could have been raised' in a prior action." *Stewart v. U.S. Bancorp*, 297 F.3d 953, 956 (9th Cir.
5  2002) (quoting *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 713 (9th Cir. 2001)).
6  The doctrine "encompasses vindication of both public and private interests. The private values
7  protected include shielding litigants from the burden of re-litigating identical issues with the same
8  party, and vindicating private parties' interest in repose. The public interests served include
9  avoiding inconsistent results and preserving judicial economy." *Clements v. Airport Auth. of*
10 *Washoe Cnty.*, 69 F.3d 321, 330 (9th Cir. 1995).

Res judicata applies when there is: (1) an identity of claims; (2) a final judgment on the merits; and (3) identity or privity between parties. *Stewart*, 297 F.3d at 956.

### 1. Identity of Claims

To determine identity of claims for res judicata purposes, courts consider the following factors: (1) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (2) whether substantially the same evidence is presented in the two actions; (3) whether the two suits involve infringement of the same right; and (4) whether the two suits arise out of the same transactional nucleus of facts. *Turtle Island Restoration Network v. U.S. Dep't of State*, 673 F.3d 914, 917-18 (9th Cir. 2012) (quotation omitted). The most important factor is whether the suits arise out of the same transactional nucleus of operative facts. *Id*.

"Whether two suits arise out of the same transactional nucleus depends upon whether they are related to the same set of facts and whether they could conveniently be tried together." *ProShipLine Inc. v. Aspen Infrastructures Ltd.*, 609 F.3d 960, 968 (9th Cir. 2010) (emphasis, citation and internal quotation marks omitted). In most cases, "the inquiry into the 'same transactional nucleus of facts' is essentially the same as whether the claim could have been brought in the first action." *United States v. Liquidators of European Fed. Credit Bank*, 630 F.3d 1139, 1151 (9th Cir. 2011). "A plaintiff need not bring every possible claim. But where claims

arise from the same factual circumstances, a plaintiff must bring all related claims together or forfeit the opportunity to bring any omitted claim in a subsequent proceeding." *Turtle Island Restoration Network*, 673 F.3d at 918. Finally, "[n]ewly articulated claims based on the same nucleus of facts may still be subject to a res judicata finding if the claims could have been brought in the earlier action." *Tahoe-Sierra Pres. Council, Inc.*, 322 F.3d at 1078.

Here, as noted above, the crux of the claims in this case is that because of the breach of the PSA in 2007, the subsequent assignments of the DOT and the foreclosure notices were invalid and fraudulent and, as a result, no real party in interest exists with the power to collect plaintiff's mortgage loan payments or to exercise the power to foreclose under the DOT. FAC ¶ 1. The same allegations – that defendants had no right to enforce the Note and foreclose as the result of improper endorsements and assignments – were made in the CDCA case, in Apostol's "Privity of Contract" and invalid assignment claims. *See* Initial Complaint CDCA at 20; FAC CDCA at 25 & ¶ 145.

While the Central District Court did not rule on the merits of the Apostol's privity of contract and invalid assignment claims, CitiMortgage, Inc. moved to dismiss the invalid assignment claim asserted in the FAC, arguing that it failed to allege facts sufficient to state a claim. *See Obed Apostel Jr. et al v. Citibank, N.A. et al.*, Case No. 2:12-cv-04395-PSG-SH Central District of California, Docket No. 22-1. After the Court dismissed the FAC for improper joinder, Apostol could have reasserted his invalid assignment claim and alleged facts in support of that claim. Instead, in the face of Citibank and CitiMortgage's objections to that cause of action, Apostol dropped the claim from his Second Amended Complaint.

The Court finds that consideration of the four factors establishes the "identity of the claims" between those at issue here and those at issue in the Central District Case. First, as a result of the dismissal of the CDCA case with prejudice, judgment was entered in favor of Citibank N.A. and CitiMortgage, Inc. Case No. 2:12-cv-04395-PSG-SH Central District of California, Docket No. 65. Allowing Apostol to reassert those claims here, would "destroy or impair" CitiMortgage's rights established by the Central District's judgment in its favor. Second, whether or not the assignments and securitization of plaintiff's mortgage loan was done

improperly (as alleged in the Central District's case) or fraudulently (as alleged here) necessarily relies on the same evidence. Third, both suits involve the infringement of plaintiff's alleged right to have his mortgage loan properly assigned. Fourth, and most importantly, the claims in this suit arise out of the same transactional nucleus of facts asserted in the Central District case.

In his opposition, Apostol argues that identity of claims cannot be established here because the Second Amended Complaint in the Central District only asserted claims for violation of RESPA, infliction of emotional distress, and negligence. Opposition Br. (Docket No. 36) at 2-3. Apostol, however, ignores that the claims asserted in his prior complaints in the Central District and the claims asserted here arise from common operative facts – namely whether his mortgage documents were properly assigned and whether defendants had the right to foreclose.[2] Relatedly, the fact that the claims asserted here have different labels than the one asserted in the Central District case is not determinative because the claims are based on the same essential allegations. Finally, consideration of one of the main purposes of the res judicata doctrine – to protect parties from having to re-litigate claims in subsequent suits – supports finding an identity of claims here because Apostol should not be able to force CitiMortgage to relitigate claims it already opposed in the Central District case.

### 2. Final Judgment on the Merits

"[A] dismissal for failure to state a claim under Rule 12(b)(6) is a 'judgment on the merits' to which res judicata applies." *Stewart*, 297 F.3d at 957. Here, the CDCA's dismissal of plaintiff's case with prejudice acts as a final judgment on the merits. The fact that Apostol chose not to reallege his lack of privity of contract/invalid assignment claims in light of CitiMortgage and Citibank's motion to dismiss and the Court's dismissal for improper joinder, does not alter that conclusion. Apostol could have realleged those claims, but for his own strategic reasons did

---

[2] As the Financial Entities point out, in *this* case Apostol also asserts that he is entitled to relief because defendants violated RESPA (FAC ¶¶ 133-34) and he suffered "severe emotional distress." *Id.* ¶¶ 104, 115. These allegations were also made in his Central District case. Rich Decl., Ex. 3 (SAC CDCA). This simply confirms the Court's finding that there is identity of claims arising from a common transactional nucleus of facts in this and the Central District case.

8

not. That strategic choice does not preclude the application of res judicata here.[3]

### 3. Identity or Privity of Parties

Where the parties in two lawsuits are not identical, privity may exist if there is "substantial identity" between parties, or "when there is sufficient commonality of interest" between them. *See Tahoe-Sierra Pres. Council, Inc.*, 322 F.3d at 1081. In other words, "[p]rivity between parties exists when a party is 'so identified in interest with a party to former litigation that he represents precisely the same right in respect to the subject matter involved.'" *Stratosphere Litig. L.L.C. v. Grand Casinos, Inc.*, 298 F.3d 1137, 1142 at n.3 (9th Cir. 2002) (quoting *In re Schimmels*, 127 F.3d 875, 881 (9th Cir. 1997)).

There is no doubt that there is privity for CitiMortgage. As to the other Citi Defendants in this case – Citi Residential Lending, Inc. and CR Title Services, Inc. – that Court finds that privity exists. Plaintiff admits that all three of the Citi Defendants are "sister" companies and subsidiaries of Citigroup. FAC ¶¶ 16-18. Moreover, with respect to Citi Residential, the First Amended Complaint alleges that by 2008, Citigroup transferred Citi Residential's assets to CitiMortgage. *Id.* ¶ 17. Therefore, as of the time of the Central District lawsuit in 2012 and 2013, CitiMortgage and Citi Residential – according to plaintiff's own allegations – had a clear commonality of interest. With respect to CR Title, the allegations against it here are that CR Title was the foreclosing trustee who was substituted in as trustee by CitiMortgage and assisted the other Citi Defendants in pursuing a foreclosure that was outside of their power given the violation of the PSA and subsequent fraudulent assignments. FAC ¶¶ 14, 18, 62. The allegations regarding CT Title's role are all derivative of the argument that CitiMortgage did not have authority – in light of the breach of the PSA and subsequent fraudulent assignments – to substitute CT Title in as trustee and, for similar reasons, CitiMortgage could not direct CT Title to proceed with the foreclosure. *See id.* ¶¶ 64-66. The Court concludes that CT Title is so "identified in interest" with CitiMortgage in the prior lawsuit, that privity exists between them for purposes of res judicata.

Finally, while defendant MERS was not a party to the prior suit, its interests are also

---

[3] Apostol does not address in his Opposition whether the second two res judicata factors—a judgment on the merits and privity of parties – have been met.

aligned with CitiMortgage sufficiently to establish privity. The current complaint alleges that MERS was fraudulently assigned the DOT by Citi Residential Lending in 2009 and then MERS fraudulently assigned the DOT to CitiMortgage in 2011. FAC ¶¶ 11, 13. These actions were taken by MERS to ―cover up the failed securitization" by Citi Residential. *Id*. ¶¶ 53-55. As noted above, plaintiff admits that Citi Residential's assets and operations were taken over by CitiMortgage. *Id*. ¶ 17. The right of Citi Residential, and by extension CitiMortgage, to assign the DOT to MERS and then for MERS to further assign the DOT back to CitiMortgage, are the same rights defended by CitiMortgage in the Central District case.

For the foregoing reasons, the Court finds that Apostol's claims asserted in this case are barred by the doctrine of res judicata in light of the claims that he litigated in the Central District of California.

### B. Standing to Challenge the Securitization and Subsequent Assignments

Even if not barred by res judicata, the Financial Entities argue that plaintiff does not have standing to challenge the assignments of the DOT based on the alleged deficiencies in securitization of the loan under the PSA; allegations which underlie each of the claims asserted in this case. The Court agrees that the key to *all* of plaintiff's claims is his contention that the failure in the securitization of the mortgage – which was allegedly due to the failure to assign and/or record the assignment of the DOT by the date required under the PSA governing the CMLTI 2007-AMC2 Trust – ―resulted to [sic] an irreversible break in the chain of title of the mortgaged property." FAC ¶ 49; *see also id*. ¶¶ 9, 10, 53, 65, 77, 92. Plaintiff argues that this procedural defect in the securitization means that subsequent assignments, the foreclosure process, and resulting foreclosure were defective and void. As a result, plaintiff contends that there is a cloud on the title to the foreclosed property, and no clear chain of title establishes the party who has the right to collect mortgage payments under the Note and enforce the rights (*e.g*., the right to foreclose) under the DOT. *See, e.g.,* FAC ¶¶ 10, 65, 74, 75.

The Financial Entities argue that individuals who are not a party to a PSA do not have standing to asset claims that arise out of allegations of non-compliance with that PSA. This appears to be the majority view in this District. *See, e.g., Flores v. GMAC Mortgage, LLC*, C 12-

794 SI, 2013 WL 2049388, *3 (N.D. Cal. May 14, 2013) (finding plaintiff did not have standing to assert claims stemming from alleged deficiencies with the creation of the PSA); *McGough v. Wells Fargo Bank, N.A.*, 2012 WL 2277931, *4 (N.D.Cal. Jun. 18, 2012) (holding that plaintiff lacks standing to enforce a PSA where plaintiff is not an investor or party to the PSA); *Sami v. Wells Fargo Bank*, C 12-00108 DMR, 2012 WL 967051, *6 (N.D. Cal. Mar. 21, 2012) ("to the extent Plaintiff bases her claims on the theory that Wells Fargo allegedly failed to comply with the terms of the PSA, the court finds that she lacks standing to do so because she is neither a party to, nor a third party beneficiary of, that agreement.").

Plaintiff relies on *Glaski v. Bank of Am., Nat't Ass'n*, 218 Cal. App. 4th 1079, 1097 (2013). In *Glaski*, the California Court of Appeal held that allegations that the transfer of the DOT to a securitized trust post the closing date required by PSA, were sufficient to allege a claim that the attempted transfers of the DOT were void. *Id*. at 1097-98. However, *Glaski* represents a distinct minority view on the standing of third parties to enforce or assert claims based on alleged violations of a PSA. Indeed, other California Court of Appeal decisions have found to the contrary. For example, the Court of Appeal in *Jenkins v. JP Morgan Chase Bank, N.A.*, 216 Cal. App. 4th 497, 515 (2013) rejected a plaintiff's attempt to rely on alleged deficiencies in the securitization process to challenge subsequent assignments of the promissory note. The Court held that "[a]s an unrelated third party to the alleged securitization, and any other subsequent transfers of the beneficial interest under the promissory note, Jenkins lacks standing to enforce any agreements, including the investment trust's pooling and servicing agreement, relating to such transactions." Even assuming that the subsequent transfers of the note were invalid, the Court nonetheless concluded that plaintiff "is not the victim of such invalid transfers because her obligations under the note remained unchanged. Instead, the true victim may be an entity or individual who believes it has a present beneficial interest in the promissory note and may suffer the unauthorized loss of their interest in the note." *Id*.

Moreover, courts in this District have expressly rejected *Glaski* and adhered to the majority view that individuals who are not parties to a PSA cannot base wrongful foreclosure claims on alleged deficiencies in the PSA/securitization process. *See, e.g., Dahnken v. Wells Fargo Bank,*

11

*N.A.*, C 13-2838 PJH, 2013 WL 5979356, *2 (N.D. Cal. Nov. 8, 2013) ("[t]he court adopts the 'majority position' of courts within this district, which is that 'plaintiffs lack standing to challenge noncompliance with a PSA in securitization unless they are parties to the PSA or third party beneficiaries of the PSA.'"); *In re Sandri*, 2013 WL 5925655 (Bankr. N.D. Cal. Nov. 4, 2013) ("The court disagrees, as *Glaski* is inconsistent with the majority line of cases and is based on a questionable analysis of New York trust law.").

The Court notes that the *only* substantiated argument plaintiff makes – in his FAC and in his opposition to the Financial Entities' motion to dismiss – as to why the 2009 and 2011 assignments are void *is* the violation of the PSA. Plaintiff does not cite any authority to argue that the parties were required *under California law* to assign and/or record the assignment of the DOT at the same time as the loan was sold to the Trust. Nor does plaintiff cite any authority demonstrating that the defendants' failure to assign and/or record the assignment of the DOT at the same time the loan was sold to the Trust means that any subsequent assignment of the DOT is invalid as a matter of law.

Finally, there is persuasive authority in California that absent any allegation of prejudice, plaintiffs do not have standing to complain about irregularities in the foreclosure process post-foreclosure. *See, e.g., Siliga v. Mortgage Electronic Registrations Systems, Inc.*, 219 Cal.App. 4th 75 (2013) (borrowers lacked standing to complain about loan servicer's and assignee's alleged lack of authority to foreclose on deed of trust where borrowers were in default under the note, absent evidence that the original lender would have refrained from foreclosure); *Fontenot v. Wells Fargo Bank, N.A.*, 198 Cal.App. 4th 256, 272 (2011) (to recover on wrongful foreclosure claim, borrower must demonstrate that the alleged imperfection in the foreclosure process was prejudicial; no prejudice exists where borrower was in default and the assignment of the loan did not interfere with the borrower's ability to pay).

In this case, the fact that there may have been (and the Court is not finding there were) deficiencies in the securitization process that created irregularities in the foreclosure process, did not change the terms of plaintiff's Note (requiring mortgage payments) or change the terms of the DOT (explaining the Beneficiary's remedies upon default). *See, e.g., Simmons v. Aurora Bank,*

*FSB*, 5:13-CV-00482 HRL, 2013 WL 5508136, *2 (N.D. Cal. Sept. 30, 2013) ("Even if there were some defect in the assignment of the deed of trust, that assignment would not have changed plaintiff's payment obligations."). Importantly, plaintiff does not allege in his FAC that he suffered a distinct prejudice as a result of the complained of irregularities in the securitization process.[4] Instead, the only harm he suffered resulted from the foreclosure itself. There is no dispute on the record before the Court that the Beneficiary (whoever plaintiff believes that is) was entitled to pursue foreclosure under the terms of the DOT signed by plaintiff.[5]

Because *all* of plaintiff's causes of action against the Financial Entities rest on his contention that the failure to assign the DOT to the Trust within the timeframe specified by the PSA governing the trust was "the event" that broke the chain of title and made the subsequent assignments invalid, the Court finds that plaintiff does not have standing to asset his causes of action against the Financial Entities.

Finally, plaintiff has had two opportunities in this case to allege viable causes of action against the Financial Entities and three opportunities to allege a viable cause of action in his Central District of California case against CitiMortgage. In these circumstances, further leave to amend is not warranted. As such, the Court GRANTS the Financial Entities' motion to dismiss WITH PREJUDICE.

## II. INDIVIDUAL DEFENDANTS' MOTION TO DISMISS

The only allegations in the FAC regarding defendants Moore and Bly are that Moore fraudulently signed the 2009 "Corporate Assignment of Deed of Trust" and that Bly fraudulently notarized the same. Specifically, plaintiff contends that these defendants engaged in fraud because they are "very well known and publicized ‗robo-signers-for-hire,'" FAC ¶ 12, and that Ms. Moore

---

[4] For example, plaintiff does not complain that as the result of the securitization and/or failure to assign the DOT, he received inconsistent directives about who he should make mortgage payments to or that he was unable to find out who to make payments to in order to cure his default and/or stop the foreclosure.

[5] As the Financial Entities point out, in his Central District case, plaintiff alleged that he was in default on his mortgage loan. *See* Rich Decl., Ex. 3 ¶¶ 6 ("…Plaintiff was in default…"), 16 ("Plaintiff was in default during the modification process"), 90 ("After Plaintiff defaulted on the mortgage payments, he applied for modification"), 107 (Plaintiff was in "default on the loan").

13

is not a "Vice President or employee of CITI RESIDENTIAL LENDING as was falsely represented in this assignment of mortgage instrument; she is in fact an employee of NATIONWIDE TITLE CLEARING (hereinafter "NTC")." *Id*. Plaintiff asserts that "Notary Public BRYAN BLY is also an employee NTC. Like Ms. Moore, Mr. Bly is a 'robo-signer for hire,' known to falsely represent himself as officer and employee of various lenders and mortgage servicing companies." *Id*.

The FAC does not identify which causes of action are asserted against which defendants. However, because the claims asserted against Moore and Bly are clearly fraud-based, the Court will consider that the Second Cause of Action – for constructive fraud – as asserted against Moore and Bly. There are no facts alleged that would support asserting any of the other causes of action – Wrongful Foreclosure (First), Quiet Title (Third), Violation of the Conditions Precedent to DOT (Fourth), Violation of California Civil Code § 2934(a) (Fifth), or violation of TILA/RESPA (Sixth) – against them because Moore and Bly were only involved in signing the 2009 DOT Assignment. With respect to the cause of action for violation of the Unfair Competition Law (Seventh), the claim is asserted against the "Foreclosing Defendants" (FAC ¶ 146), and is based on claims the "Foreclosing Defendants" engaged in various deceptive practices including irregularities in imposing fees and collecting payments on mortgage accounts, instituting improper and premature foreclosure proceedings, and acting as beneficiaries and trustees without the legal authority to do so. *Id*. ¶ 147. There are no allegations against Moore and Bly, who played no role in the foreclosure, in this cause of action either.[6]

The Court finds that the constructive fraud claim against Moore and Bly must be dismissed. As an initial matter, the fraud alleged against Moore and Bly is primarily derivative of plaintiff's allegation that the faulty securitization broke the chain of title and, therefore, Citi Residential had no power to assign the DOT to MERS as a nominee for CitiMortgage in 2009. Because there is no support for that argument, as explained above, the claims that Moore and Bly

---

[6] Moore and Bly ask the Court to take judicial notice of various court filings that discuss the defendants' roles at Nationwide Title Clearing, Inc. *See* Request for Judicial Notice at Docket No. 30. As the Court does not rely on these documents in granting Moore and Bly's Motion to Dismiss, the Request for Judicial Notice is DENIED as moot.

somehow contributed to the perpetuation of the fraud are unsupportable and must be dismissed.

Moreover, even if plaintiff could assert a separate constructive fraud claim based on Moore's representation that she was a Vice President of Citi Residential, when she was instead an employee of Nationwide Title Clearing, and that Bly fraudulently notarized that Ms. Moore was "well known" to him as a "Vice President if Citi Residential," when Ms. Moore was not, that claim must still be dismissed for at least three reasons. First, Apostol was not a party to the assignment and, therefore, cannot challenge errors in its execution. *See, e.g., Shkolnikov v. JPMorgan Chase Bank*, 12-03996 JCS, 2012 WL 6553988 (N.D. Cal. Dec. 14, 2012) ("but Plaintiffs do not have standing to press those objections because they are neither parties to nor third party beneficiaries" to the contested assignments).

Second, and relatedly, Apostol suffered no harm from the allegedly defective assignment, because the assignment only substituted a new creditor. It did not change plaintiff's obligations under the Note or change the creditor's responsibilities under the DOT. *See, e.g., Natividad v. Wells Fargo Bank, N.A.*, 3:12-CV-03646 JSC, 2013 WL 2299601 (N.D. Cal. May 24, 2013) ("any harm or prejudice Plaintiffs suffered through foreclosure was not the result of defects in the Substitution or the foreclosure sale."). If there was any harm from the fact that defendant Moore *may* not have been a Vice President of Citi Residential and, therefore, *may* not have had authority to transfer the DOT from Citi Residential to MERS as nominee for CitiMortgage, it would be *to* Citi Residential (acting as agent for Argent) or to MERS/CitiMortgage (acting as recipient). *Cf. Herrera v. Fed. Nat. Mortgage Assn.*, 205 Cal. App. 4th 1495, 1508 (2012) ("If MERS lacked authority to assign the DOT and note to OneWest and, in turn, OneWest lacked authority to assign the DOT and note to Fannie Mae, the true victims were not plaintiffs but the lender."). However, none of these parties – who are all defendants in this case – object to the 2009 assignment of the DOT and all are in agreement that the assignment is valid.[7]

---

[7] The Court also notes that plaintiff does not challenge the right of Citi Residential, acting on behalf of Argent, to assign the DOT; *other* than plaintiff's argument that by failing to assign the DOT to the Trust, the PSA was violated and the chain of title broken. Even if the challenged assignment by Moore/Bly was invalid, according to plaintiff Citi Residential's assets and operations were taken over by CitiMortgage. FAC ¶ 17. Therefore, Citi Residential/Argent's interest in the DOT went to CitiMortgage despite any alleged deficiencies in the 2009 Assignment

15

Third, in order to allege a claim for constructive fraud, there must be a fiduciary or confidential relationship between the parties. *In re Harmon*, 250 F.3d 1240, 1248 n.10 (2001) ("Constructive fraud is a unique species of fraud applicable only to a fiduciary or confidential relationship. . . .'") (quoting *Assilzadeh v. Cal. Fed. Bank*, 82 Cal.App.4th 399 (2000)). As agents of the mortgage lending and servicing defendants, no such fiduciary relationship can be established between Apostol and Moore/Bly to support a claim constructive fraud. *See, e.g., Davenport v. Litton Loan Servicing, LP*, 725 F. Supp. 2d 862, 883 (N.D. Cal. 2010) (no fiduciary relationship in context of mortgage loan and foreclosure proceedings in absence of facts that defendant "acted outside the ordinary scope of a commercial lender"); *Fortaleza v. PNC Fin. Servs. Grp., Inc.*, 642 F. Supp. 2d 1012, 1025 (N.D. Cal. 2009) ("as mortgage lenders, these defendants have no fiduciary duty to plaintiff, absent special circumstances").

In his opposition, plaintiff does not address the substance of Moore and Bly's arguments as to why the FAC must be dismissed as to them. Instead, plaintiff submits additional evidence to support his allegation that Moore and Bly were "robo-signers" and argues that the motion to dismiss should be denied because Moore and Bly failed to submit evidence in their opposition to prove that Moore and Bly *actually* signed the 2009 document or show what they knew about plaintiff's Note and DOT at the time they signed the 2009 Assignment. *See* Docket No. 35. Plaintiff's reliance on evidence regarding whether Moore and/or Bly can be considered "robo-signers" is irrelevant in light of plaintiff's failure to state a claim against them in this action. And plaintiff's attempt to call into question whether Moore/Bly actually signed the 2009 assignment, only undermines his own allegations against them. *But see* FAC ¶ 12.

As such, plaintiff's claim for constructive fraud against Moore and Bly fails as a matter of law and must be DISMISSED WITH PREJUDICE.[8]

---

(which simply appointed MERS as the nominee for CitiMortgage). It was CitiMortgage who, in 2011, started the foreclosure proceedings by substituting the foreclosing entity CR Title as Trustee in place of Town and County Title. As the Court has rejected the argument that the alleged violation of the PSA broke chain of title, there is *no other argument* that CitiMortgage is not a beneficiary under the DOT entitled to foreclose.

[8] As noted above, plaintiff has already amended his complaint in this action and had three chances to state claims regarding the assignments of his mortgage and the foreclosure on his Property in his Central District case. As such, the Court finds that further leave to amend is not warranted.

## CONCLUSION

For the foregoing reasons, the Court GRANTS defendants' motions to dismiss and DISMISSES this case WITH PREJUDICE.

**IT IS SO ORDERED**.

Dated: November 21, 2013



_____
WILLIAM H. ORRICK
United States District Judge

17